E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

January 10 2025 3:50 PM

CONSTANCE R. WHITE
COUNTY CLERK
NO: 21-2-08665-1

THE HONORABLE SHELLY K. SPIER-MOSS
Department 13

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
COUNTY OF PIERCE

DAVID J. KOVANEN, an individual, and all those similarly situated,

Plaintiff,

v.

ASSET REALTY, LLC, d/b/a CENTURY 21 NORTHWEST, a Washington limited liability company; CHAD BARRON STOREY, individually; CENTURY 21 REAL ESTATE LLC; ANYWHERE REAL ESTATE INC.; ANYWHERE REAL ESTATE GROUP, LLC; ANYWHERE REAL ESTATE SERVICES GROUP LLC; ANYWHERE INTERMEDIATE HOLDINGS LLC.

Defendants.

NO. 21-2-08665-1

**SECOND AMENDED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF**

COMES NOW the Plaintiff, David J. Kovanen, by and through his undersigned counsel, and for causes of action against the above-named Defendants, on behalf of himself and all person similarly situated, brings the following class action complaint against Asset Realty, LLC, d/b/a Century 21 Northwest and Chad Barron Storey (together the "Asset Defendants"); and Anywhere Real Estate Inc., Anywhere Real Estate Group LLC, Anywhere Real Estate Services

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 1
Case No. 21-2-08665-1

Group LLC, Anywhere Intermediate Holdings LLC, and Century 21 Real Estate LLC (collectively, "Anywhere Defendants"). Plaintiff complains and alleges as follows:

## I. INTRODUCTION

1.1    At issue here is Defendants' unfair and deceptive practice of sending or substantially assisting in the sending of unsolicited commercial text messages to market real estate brokerage services, including to consumers in Washington. Defendants also unlawfully sent texts to Washington consumers whose telephone numbers had been registered on the National Do Not Call Registry.

1.2    This is a proposed class action under Washington's Consumer Protection Act (CPA), RCW 19.86, *et seq.*, arising from the Defendants' violations of Washington's Commercial Electronic Mail Act (CEMA), RCW 19.190, *et seq.* and under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, *et seq.*, which prohibits among other things, telemarketing calls and texts to numbers on the National Do Not Call Registry unless the caller has the recipient's written permission.

1.3    In amending CEMA to prohibit unsolicited commercial text messages, Washington's legislature declared:

> The legislature recognizes that the number of unsolicited commercial text messages sent to cellular telephones and pagers is increasing.  This practice is raising serious concerns on the part of cellular telephone and pager subscribers….The legislature [intends] to limit the practice of sending unsolicited commercial text messages to cellular telephone or pager numbers in Washington.

RCW 19.190.060, Intent -- 2003 c 137.

1.4    Similarly, Congress enacted the TCPA in 1991 in response to a growing number of consumer complaints regarding certain telemarketing practices.

1.5    The CEMA prohibits persons conducting business in the state of Washington from initiating or assisting in the transmission of electronic text messages to "telephone numbers

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 2
Case No. 21-2-08665-1

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

assigned to a Washington resident for cellular telephone or pager service that is equipped with short message capability or any similar capability allowing the transmission of text messages." RCW 19.190.060.

1.6     The TCPA makes it unlawful for any entity to make more than one call or text in a 12-month period to any residential telephone subscriber whose number is registered with the National Do Not Call Registry. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

1.7     The CEMA provides a private cause of action to recipients of commercial electronic text messages sent in violation of the statute. RCW 19.190.040.

1.8     The TCPA provides a private cause of action to persons who receive calls in violation of these provisions. *See* 47 U.S.C. §§ 227(b)(3).

1.9     For purposes of the TCPA, text messages are considered calls. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

1.10     A seller of goods or services can be liable for CEMA and TCPA violations even if the seller does not directly place or initiate the text messages.

1.11     Regulations of the Federal Communication Commission (FCC) "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See Rules and Regs. Implementing the Telephone Consumer Prot. Act of 1991*, Mem. and Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

1.12     The FCC affirmed this principle in 2013, when it explained that "a seller …. may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers*." See In the Matter of the Jt. Pet. filed by Dish Network, LLC (Dish Network)*, 28 F.C.C. Rcd. 6574, 6574 (2013); *see also Kristensen v. Credit Payment Servs.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (observing *Dish Network* governs vicarious liability under the TCPA).

1.13     The CEMA imposes liability not only on the person who initiates an illegal text message, but also on any person who substantially assists in the sending of the unlawful text message.

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 3
Case No. 21-2-08665-1

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1.14    Defendants and their agents and employees initiated or provided substantial assistance to licensed real estate agents and non-licensed real estate professionals who transmit thousands of unsolicited commercial electronic text messages to the cellular telephones of Plaintiff and proposed class members, causing them injuries, including invasion of their privacy, aggravation, annoyance, and wasted time and attention tending to a barrage of unwanted commercial text messages, or "junk texts."

1.15    Defendants and their agents and employees initiated or provided substantial assistance to licensed real estate agents and non-licensed real estate professionals who sent unsolicited telemarketing texts to Washington residents whose phone numbers were on the National Do Not Call Registry (NDNCR).

1.16    Defendants are vicariously liable for violations of the CEMA and TCPA under common law agency principles set out in the Restatement (Third) of Agency, including (1) "classical" agency; (2) apparent authority; and (3) ratification. *Dish Network*, at 6586-87.

1.17    Defendants not only authorized and ratified their agents' practice of sending unsolicited advertising text messages to residential and cellular telephone numbers to market Century 21 real estate services, they also welcomed the financial benefits of the increased home sales the advertising text messages generated.

1.18    In their zeal to find clients and get more commissions, Defendants failed to take sufficient precautions to ensure their agents did not engage in harassing telemarketing procedures.

1.19    In particular, Defendants failed to (1) adopt sufficient procedures to ensure that their agents had clear and affirmative consent to send text messages to potential clients and (2) adopt sufficient procedures to ensure their agents did not call potential customers who are on the NDNCR.

1.20    The Anywhere Defendants have thus far evaded accountability for their violations of the CEMA and TCPA because they (1) use a complicated corporate structure by which they abuse the corporate form through a vast network of shell companies, wholly owned

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 4
Case No. 21-2-08665-1

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

subsidiaries, purported franchises, and other entities, (2) claim their agents are "independent contractors," and (3) turned a blind eye to the illegal telemarketing conducted in Washington State by Asset Realty and Storey.

1.21    Storey is personally liable for his business's CEMA and TCPA violations because he participated in the conduct and knowingly approved of the conduct.

1.22    Pursuant to CR 23, Plaintiff brings this action on behalf of himself and classes of all others similarly situated, against Defendants.

1.23    Plaintiff seeks statutory damages, exemplary damages, declaratory and injunctive relief, costs and attorneys' fees, and any other available legal or equitable remedies against the Defendants for their illegal and abusive telemarketing practices in the form of spam texting to Washington cellular telephone users and calling or texting Washington residents whose phone numbers were on the NDNCR.

## II.    PARTIES

Plaintiff.

2.1    Plaintiff is, and at all times relevant hereto was, an individual and a natural person residing in Pierce County, Washington.

2.2    Plaintiff and proposed class members are consumers, business entities, and cellular telephone users residing in Washington, who are all "persons" as that term is defined in RCW 19.190.010(11) and RCW 19.86.010(1).

2.3    Plaintiff and all proposed class members are citizens of the state of Washington.

Defendant Asset Realty, LLC.

2.4    Defendant Asset Realty, LLC, is a Washington limited liability company, operating under the trade name Century 21 Northwest, with its principal place of business located at 121 Lake Street South, Suite 201, Kirkland, Washington, 98033.

2.5    Defendant Asset Realty, LLC (Asset), regularly transacts business in Pierce County, Washington. Asset is a citizen of Washington state.

Defendant Chad Barron Storey.

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 5
Case No. 21-2-08665-1

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

2.6     Defendant Chad Barron Storey (Storey) is the sole member and manager of Asset Realty, LLC, and as such, controls its policies, activities, and practices, including those alleged in this Complaint. Storey also is an employee of Asset.

2.7     Storey resides in King County, Washington and is a citizen of Washington state.

Defendant Century 21 Real Estate LLC.

2.8     Defendant Century 21 Real Estate LLC (Century 21) claims it "has developed a franchise system for the promotion and assistance of independently owned or operated real estate brokerage offices, including policies, procedures and techniques designed to enable such offices to compete more effectively in the real estate market." *See In re Asset Realty LLC*, Case No. 23-10326 MLB, ECF No. 92 at ¶ 5 (W.D. Wash. Bankr. Crt. July 18, 2023).

2.9     Century 21 refers to these policies and procedures as the "Century 21 System" and they include, among other things "centralized advertising programs, recruiting programs, referral programs, and sales and management training programs." *Id.*

2.10     Century 21 is incorporated in the State of Delaware and its principle place of business is at 175 Park Avenue, Madison, New Jersey 0790.

2.11     Century 21 does business in the State of Washington, including in Pierce County.

Defendant Anywhere Real Estate Services Group LLC.

2.12     Defendant Anywhere Real Estate Services Group LLC is incorporated in the State of Delaware, and its principle place of business is at 175 Park Avenue, Madison, New Jersey 07940 (Anywhere Headquarters).

2.13     Anywhere Real Estate Services Group LLC owns Century 21.

2.14     Anywhere Real Estate Services Group LLC does business in the State of Washington, including in Pierce County, through Century 21.

2.15     Anywhere Real Estate Services Group LLC is owned by Defendant Anywhere Real Estate Group LLC and is an alter ego of the other Anywhere Defendants.

Defendant Anywhere Real Estate Inc.

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 6
Case No. 21-2-08665-1

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

2.16    Defendant Anywhere Real Estate Inc. claims to be "the parent company of some of the world's leading real estate brokerage brands and service businesses" including Century 21. Formerly known as Realogy, Anywhere Real Estate Inc. is a holding company for its consolidated subsidiaries including Anywhere Real Estate Group and Anywhere Intermediate Holdings LLC.

2.17    Anywhere Real Estate Inc. is incorporated in the State of Delaware, and its principal place of business is at the Anywhere Headquarters.

2.18    Anywhere Real Estate Inc. owns and controls a variety of subsidiaries, franchises, shell companies, and other entities, as well as the Century 21 brand, all of which are alter-egos of Anywhere Real Estate Inc. as set forth in paragraphs 4.89-4.97.

2.19    Anywhere Real Estate Inc. is the direct owner of Anywhere Intermediate Holdings LLC.

2.20    Anywhere Real Estate Inc. is the indirect owner of Anywhere Real Estate Group LLC.

2.21    Anywhere Real Estate Inc. does business in Washington and in Pierce County through subsidiaries, franchises, and shell companies, including Century 21.

Defendant Anywhere Intermediate Holdings LLC.

2.22    Defendant Anywhere Intermediate Holdings LLC is incorporated in the State of Delaware, and its principal place of business is at Anywhere Headquarters. It is the owner of Anywhere Real Estate Group LLC and is owned by Anywhere Real Estate Inc.

2.23    Defendant Anywhere Intermediate Holdings LLC does business in Washington, including Pierce County through subsidiaries, franchises, and shell companies, including Century 21.

2.24    Defendant Anywhere Intermediate Holdings LLC is a subsidiary and alter-ego of Anywhere Real Estate Inc.

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 7
Case No. 21-2-08665-1

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Defendant Anywhere Real Estate Group LLC.

2.25    Defendant Anywhere Real Estate Group LLC is the direct owner of Anywhere Real Estate Services Inc.

2.26    Defendant Anywhere Real Estate Group LLC is incorporated in the State of Delaware, and its principal place of business is at Anywhere Headquarters.

2.27    Defendant Anywhere Real Estate Group LLC owns Defendant Anywhere Real Estate Services Group LLC.

2.28    Anywhere Real Estate Group LLC does business in Washington, including Pierce County through subsidiaries, franchises, and shell companies, including Century 21.

2.29    Anywhere Real Estate Group LLC is a subsidiary and alter ego of Anywhere Intermediate Holdings LLC and Anywhere Real Estate Inc.

2.30    The Asset Defendants are "persons" as that term is defined in RCW 19.190.010(11) and RCW 19.86.010(1) and for purposes of the TCPA.

2.31    The Anywhere Defendants are "persons" as that term is defined in RCW 19.190.010(11) and RCW 19.86.010(1) and for purposes of the TCPA.

### III.    JURISDICTION AND VENUE

3.1    This Court has jurisdiction over the parties to this action and the subject matter of this lawsuit because this is an action to recover damages and the demand exceeds three hundred dollars.

3.2    Venue is proper in this Court pursuant to RCW 4.12.020 because the causes of action arose, in whole or in part, in Pierce County, and pursuant to 4.12.025 because Defendants transact business in Pierce County either directly or through their subsidiaries and alter egos.

### IV.    FACTS

**A.    The CEMA prohibits initiating or facilitating commercial text messages.**

4.1    The CEMA originally precluded unwanted emails that contain false or misleading information.

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 8
Case No. 21-2-08665-1

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

4.2     The Washington legislature amended the CEMA to "limit the practice" of sending commercial text messages to cell phones. *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 724, 406 P.3d 1149 (2019) (citing LAWS of 2003, ch. 137, § 1).

4.3     The CEMA prohibits persons conducting business in the state of Washington to "initiate or assist in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service that is equipped with short message capability or any similar capability allowing the transmission of text messages." RCW 19.190.060(1).

4.4     Under the CEMA, "[i]nitiate the transmission refers to the action by the original sender of an electronic mail message or an electronic text message, not to the action by any intervening interactive computer service or wireless network that may handle or retransmit the message, unless such intervening interactive computer service assists in the transmission of an electronic mail message when it knows, or consciously avoids knowing, that the person initiating the transmission is engaged, or intends to engage, in any act or practice that violates the consumer protection act." RCW 19.190.010(7).

4.5     Under the CEMA, a person "assists the transmission" of a commercial text message when the person takes actions "to provide substantial assistance or support which enables any person to formulate, compose, send, originate, initiate or transmit a … commercial electronic text message when the person providing the assistance knows or consciously avoids knowing that the initiator of the commercial … electronic text message is engaged, or intends to engage, in any practice that violates the consumer protection act." RCW 19.190.010(1).

4.6     The statute provides a private cause of action to persons who received texts in violation of CEMA to enjoin further violations. RCW 19.190.090.

4.7     A person who receives a text message in violation of CEMA may bring a claim for damages under Washington's Consumer Protection Act (CPA), RCW 19.86 *et seq.*

4.8     To establish a violation of Washington's CPA, a claimant must establish five elements: (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that affects

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 9
Case No. 21-2-08665-1

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

the public interest, (4) injury to plaintiff's business or property, and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784-785, 719 P.2d 531 (1986).

4.9    A violation of RCW 19.190.060 establishes all five elements of the CPA vis a vis RCW 19.190.060(2) (providing the practices prohibited under the statute "are matters vitally affecting the public interest" and "are not reasonable in relation to the development and preservation of business" and constitute "an unfair or deceptive act in trade or commerce and an unfair method of competition" for the purposes of applying the CPA). *See also Lyft*, 189 Wn.2d at 732 (holding a violation of RCW 19.190.060 establishes the injury and causation elements of a CPA claim as a matter of law).

**B.    The TCPA prohibits unsolicited text messages to phone numbers on the National Do Not Call Registry.**

4.10    The TCPA makes it unlawful for any entity to make more than one call in a 12-month period to any number that has been registered with the National Do Not Call Registry for at least 31 days. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

4.11    The TCPA provides a private cause of action to persons who receive calls or texts in violation of these provisions. *See* 47 U.S.C. §§ 227(b)(3), (c).

4.12    For purposes of the TCPA, text messages are considered calls. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

4.13    A seller of goods or services can be liable for TCPA violations even if the seller does not directly place or initiate the calls or texts.

4.14    Regulations of the Federal Communication Commission ("FCC") "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See Rules and Regs. Implementing the Telephone Consumer Prot. Act of 1991*, Mem. and Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

4.15    The FCC affirmed this principle in 2013, when it explained that "a seller …. may be held vicariously liable under federal common law principles of agency for violations of either

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 10
Case No. 21-2-08665-1

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

section 227(b) or section 227(c) that are committed by third-party telemarketers*." See In the Matter of the Jt. Pet. filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 (2013).

**C.      Defendants can be liable for CEMA and TCPA violations under common law principles of vicarious liability.**

4.16     The Restatement (Third) of Agency describes three theories of vicarious liability, including (1) "classical" agency; (2) apparent authority; and (3) ratification. *Dish Network*, at 6586-87.

4.17     Classical agency is when the telemarketer has the right to control the actions of its agent.

4.18     For classical agency, an agent acts within the scope of its authority if the principal tells the agent to act (express actual authority) or if the principal's reasonably interpreted words or conduct would cause an agent to believe that the principal consents to have an act done on her behalf (implied actual authority).

4.19     A principal is vicariously liable under an apparent authority theory where a manifestation by the principal causes a third party to reasonably believe that the agent was authorized to perform an act.

4.20     A principal is liable under a ratification theory of vicarious liability where the principal either (1) knowingly accepts a benefit where there is an objective indication that the principal exercised choice and consented to the acts of the agent, or engages in (2) willful ignorance, where the principal may not know the material facts but ratifies the purported agent's conduct with awareness that such knowledge was lacking. A principal may ratify acts done by an agent or a person who purports to be one.

**D.      Storey created, developed, marketed, and maintained a lead generation system that uses telemarketing to generate substantial revenue for Defendants.**

4.21     Storey is an information technology developer.

4.22     He is the sole member and sole manager of Asset. He also is an Asset employee.

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 11
Case No. 21-2-08665-1

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

4.23   In or around 2005, Storey developed the "lead generation platform" that Defendants use to gather relevant data from public and private sources and predict when property owners are likely to sell their property. The product of this process is often called a "lead."

4.24   Storey developed, as part of the lead generation platform, a system that (1) obtains contact information for each property owner; (2) predicts the best time to contact that property owner; (3) determines the frequency of contacts a telemarketer should make; (4) determines the duration between contacts the call center makes; and (5) queues calls for the telemarketers so they do not spend their time inefficiently determining who to call next.

4.25   Storey also helped to create a coaching and training program called "The Breakfast Club" that could be used to teach users of the lead generation system how to convert leads into closed sales.

4.26   Storey initially owned and developed the lead generation system and training program individually. He then allowed his company, Asset, to use the system. Eventually, he sold leads to others.

4.27   In or around 2012 and 2013, Storey decided to refine the lead generation system so that it would be marketable to real estate agents who wanted leads for likely property sellers so they could procure listing agreements with them. Storey believed that if he could generate solid and reliable predictive leads on properties that the owners were intending to sell, then he could sell those leads to real estate licensees, brokers, firms, and companies to pursue those likely sellers and obtain listing agreements before they contacted any other real estate agent. Storey called those leads "warm leads."

4.28   Storey continued to refine the lead generation system, developing software that culled out potential leads based on certain criteria. Leads that survived the culling process were called "hot leads."

4.29   Hot leads proved so valuable to Storey that he created a telemarketing division that contacted warm leads to determine whether they should be considered "hot leads."

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 12
Case No. 21-2-08665-1

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

4.30    To assist the telemarketing division, Storey created and implemented information technology that gathered and provided contact information on each lead, selected a lead to be contacted, and queued calls so that a telemarketer would not have to waste time determining who to call next.

4.31    In 2015, Storey transferred his lead generation platform to a company called Pipeline Platform, LLC, that he had formed and would manage. Pipeline Platform, LLC then licensed use of the lead generation platform to Realogy Holdings Corp., which is the predecessor company to Defendant Anywhere Real Estate Inc.

4.32    In a declaration that Storey submitted in October 2020 in connection with litigation he brought against his former partner, Storey describes the licensing agreement that Pipeline had with Realogy as "both substantial and lucrative." *See* Exhibit A (10/2/2020 Storey Decl.). According to Storey, "Realogy pays up-front fees for each market and a percentage of commission received on any sale closed from a lead generated by the Platform. Realogy also provided Pipeline [Platform, LLC] with 500 different franchise owners that Pipeline could form strategic alliances with to license the Platform. For each strategic alliance Pipeline formed with a franchise owner, Pipeline also received revenue from the franchise owner that was licensed to use the Platform."

4.33    In 2015, Storey and Defendant Asset also acquired a Century 21 franchise in Kirkland, Washington. The franchise operates under the trade name Century 21 Northwest.

4.34    The franchise agreement requires Asset to use a lead management program designated by Century 21. *See* Exhibit B (Century 21 Franchise Agreement) at § 9.5.

4.35    The franchise agreement further requires Asset to "use your best efforts to properly manage and service any leads provided to you through the lead management program and train all employees and independent sales associates on lead management through the program."

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 13
Case No. 21-2-08665-1

4.36    As part of the franchise agreement, Century 21 consented to Asset operating Pipeline Platform, LLC as a separate business. *See* Exhibit B (Century 21 Franchise Agreement) at Addendum § 25.6.

4.37    The licensing agreement between Pipeline Platform, LLC and Realogy and the Century 21 Franchise Agreement incentivized the Asset Defendants to generate as many leads as possible through the Pipeline Platform.

4.38    Every closed sale that had been generated through a Pipeline Platform lead resulted in a payment to Asset from Realogy under the licensing agreement and a commission payment from the real estate client.

4.39    The arrangement between Realogy, Century 21, and the Asset Defendants also allowed the Asset Defendants to expand their real estate enterprise by using the Century 21 brand to give their agents the "highest possible reach" to buyers and sellers, creating higher demand.

4.40    As a result of the arrangement between Realogy, Century 21, and the Asset Defendants, the Asset Defendants were able to recruit real estate licensees to affiliate with Century 21 Northwest. The Asset Defendants also recruited telemarketers and persons to sell the lead generation platform that remained a separate entity.

4.41    As the enterprise expanded, training was required. In 2016, Pipeline Platform LLC created a call center in the Philippines. According to Storey, the call center "benefitted Realogy and other Platform users after it was created and implemented. Conversions of Warm Leads to Hot Leads increased substantially because the call center and improved Call Center IP decreased the time it took to convert Warm Leads into Hot Leads and resulted in Pipeline Platform generating more Hot leads." Exhibit A (10/2/2020 Storey Decl.) ¶ 51.

4.42    In December 2018, Storey dissolved Pipeline Platform LLC and "folded" it into Asset. *Id.* ¶ 54.

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 14
Case No. 21-2-08665-1

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

4.43    Starting in 2019, Asset began paying all of the costs associated with the lead generation system, including the Philippines call center, maintenance and upkeep of the software, and the Breakfast Club training program.

4.44    Starting in 2019, Realogy started paying the amounts it owed under the license agreement to Asset.

4.45    As Storey puts it, "All Pipeline's business was managed and taken over by Century 21 Northwest."

4.46    As of October 2020, Asset was earning $13.9 million per year in "top-line revenue."

**E.    In September 2020, Defendants and their agents began using the Pipeline Platform to send commercial marketing text messages to Washington citizens.**

4.47    Defendants use the Pipeline Platform created and developed by Storey to promote the sale of their real estate services.

4.48    Defendants' sales brochures tout Century 21's "aggressive approach" to real estate marketing. Defendants tout their "highly trained inside sales team" that "prospects" buyers and sellers in Washington State and elsewhere.

4.49    In September 2020, Storey incorporated text messaging functionality into the Pipeline Platform lead generation system.

4.50    Defendants and their agents used the Pipeline Platform lead generation system to send text messages to potential buyers and sellers who had been identified as potential customers through the Pipeline Platform.

4.51    Although text message recipients will not pay for Defendants' services if they do not end up purchasing or selling a home, the purpose of the illegal text messages is to solicit real estate buyers and sellers to use Defendants' real estate services and generate commissions and other revenue for Defendants and Defendants' agents.

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 15
Case No. 21-2-08665-1

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

4.52    Before sending the text messages, Century 21 Northwest brokers did not obtain subscribers' clear and affirmative consent to receive these text messages as is required by the CEMA. *See* RCW 19.190.070.

4.53    Before sending the text messages, Century 21 Northwest brokers did not take steps to ensure that the telephone numbers to which the texts were being sent were not on the NDNCR.

4.54    Without an influx of new users generated through their lead generation system, Defendants' revenue would be adversely impacted. Defendant Anywhere Real Estate Inc. stated in the Annual Report it filed with the Securities and Exchange Commission that its "business and financial results may be materially and adversely impacted if we are unable to execute our business strategy, including if we are not successful in our efforts to … generate a meaningful number of high-quality leads for independent sales agents and franchisees."

**F.    Defendant Asset initiates or substantially assists the transmission of commercial marketing texts and is directly and vicariously liable for the practices of its agents.**

4.55    Asset initiates the transmission of commercial marketing texts.

4.56    The purpose of the text messages is to promote Asset's business and generate revenue for Defendants and their agents.

4.57    Asset substantially assists its agents in sending illegal text messages by providing agents with "leads" through the Pipeline Platform system.

4.58    Asset further substantially assists its broker agents by providing them with the technology they need to send the text messages to potential customers by giving them access to the Pipeline Platform and requiring them to contact leads provided through that system.

4.59    On information and belief, Asset's Pipeline Platform system automatically formulates and composes the text messages that are sent to Defendants' potential customers as demonstrated by the uniform form and content of the text messages.

4.60    On information and belief, all the user has to do is hit send and the message that the Asset Defendants composed is sent automatically to the recipient.

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 16
Case No. 21-2-08665-1

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

4.61   Assert substantially assists and supports the sending of illegal text messages by, inter alia: (a) providing its agents with access to leads through the Pipeline Platform lead generation system, (b) requiring agent brokers to contact Century 21 Northwest Generated Leads, (c) providing them with access to a text messaging platform that is integrated with the Pipeline Platform lead generation system, (d) providing them training on the use of the Pipeline Platform system, including its text messaging functionality, and (e) composing the text messages, including by pre-populating text messages with names and contact information.

4.62   Although Asset knows its agents were sending illegal marketing text messages to potential customers, Asset does not obtain, or require its agents to obtain, text recipients' clear and affirmative consent in advance to receive the advertising text messages and consciously avoids knowing whether commercial marketing text messages were being sent on Defendants' behalf without obtaining recipients' clear and affirmative consent in advance to receive marketing text messages.

4.63   Asset does not employ any controls within the Pipeline Platform system to ensure that its users obtain text recipients' clear and affirmative consent in advance to receive commercial marketing text messages before enabling them to send the commercial marketing text messages.

4.64   Asset did not employ any controls within the Pipeline Platform system to ensure that text recipients' telephone numbers were not on the NDNCR.

4.65   Asset is also vicariously liable for its agents' CEMA and TCPA violations.

4.65.1 Asset is vicariously liable for the conduct of its agents under classical agency principles because Asset directed or authorized their conduct constituting the statutory violations alleged in this Second Amended Complaint.

4.65.2 Asset established, approved or ratified its agents' practices.

4.65.3 Asset accepted the benefits of its agents' illegal telemarketing by accepting commissions and royalties from new sales, despite knowing that the sales were generated through the sending of the illegal telemarketing text messages challenged here.

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 17
Case No. 21-2-08665-1

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

4.65.4 Asset cloaked its agents with apparent/implied authority to act on its behalf, including but no limited to authorizing its agents to send text messages on Asset's behalf, to advertise that its agents' services were affiliated with Asset, and by authorizing its agents to bind Asset in contract directly with consumers.

4.65.5 Asset had the authority and responsibility to prevent or correct the unlawful telemarketing practices of its agents and formulated, directed, controlled, and participated in the acts and practices of its agents that violate the CEMA and TCPA, including the acts and practices described in this Second Amended Complaint.

4.65.6 Under ordinary principles of vicarious liability, Asset is liable for the CEMA and TCPA violations alleged in this Second Amended Complaint because it is directly involved in, authorized, or ratified the agents' practices that violated the CEMA and TCPA.

**G.    Defendant Storey substantially assists the transmission of commercial marketing text messages and is personally liable for the practices of his agents.**

4.66    Storey is not only the sole member and manager of Asset Realty, LLC. He also is its sole employee.

4.67    Storey created the Pipeline Platform lead generation system and maintains the software on which it runs.

4.68    Storey substantially assists in the sending of illegal commercial marketing text messages by maintaining and updating the software that runs the Pipeline Platform lead generation system.

4.69    Storey substantially assists in the sending of illegal commercial marketing text messages by updating telephone numbers and call dispositions in the Pipeline Platform system so that text messages are sent to the appropriate potential customer.

4.70    Storey substantially assists in the sending of illegal commercial marketing text messages by assisting in the training real estate professionals who use the Pipeline Platform system to send text messages to Washington citizens who are potentially interested in using Defendants' real estate services to buy or sell real estate.

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 18
Case No. 21-2-08665-1

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

4.71    Storey substantially assists in the sending of illegal commercial marketing text messages by writing the computer code that allows Defendants' agents to send pre-populated text messages to potential customers.

4.72    Although Storey knew Asset's agents were sending marketing text messages to potential customers, Storey did not require the agents to obtain recipients' clear and affirmative consent in advance to receive the advertising text messages and consciously avoids knowing whether the commercial marketing text messages were being sent to potential Asset customers without obtaining recipients' clear and affirmative consent in advance to receive marketing text messages.

4.73    When creating and developing the Pipeline Platform system, including when integrating the text messaging functionality, Storey did not include any controls within the Pipeline Platform system to ensure that its users obtain text recipients' clear and affirmative consent in advance to receive commercial marketing text messages before enabling them to send the commercial marketing text messages.

4.74    Storey does not employ controls within the Pipeline Platform system to ensure that text recipients' telephone numbers are not on the NDNCR.

4.75    Storey is individually liable for Defendants' CEMA and TCPA violations.

4.75.1 A corporate officer may be held liable for his business's Consumer Protection Act violations when the owner participates in the wrongful conduct, or "with knowledge approve[s] of the conduct." *State v. Arlene's Flowers, Inc.,* 193 Wn.2d 469, 534, 441 P.3d 1203 (2019).

4.75.2 A corporate officer also may be held personally liable for his business's TCPA violations. *See Ott v. Morg. Inv'rs Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046, 1060 (D. Or. 2014) (applying personal liability doctrine in TCPA context, collecting cases, and observing that "corporate actors may be held individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute.").

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 19
Case No. 21-2-08665-1

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

4.75.3  A corporate officer's personal liability does not depend on piercing the corporate veil. *Arlene's Flower,* 193 Wn.2d at 534; *see also State v. Ralph Williams' North West Chrysler Plymouth, Inc.*, 87 Wn.2d 298, 305-06, 322, 553 P.2d 423 (1976) (individual owner of car dealership that used misleading advertising and made deceptive claims about warranties could be held personally liable based on "his role in formulating and supervising the dealership's unlawful activities"); *Omni Innovations, LLC v. Impulse Mktg. Group, Inc.*, No. C06-1469-MJP, 2007 WL 2110337, at *2 (W.D. Wash. July 18, 2007) ("In Washington, a deceptive practice in violation of the Consumer Protection Act is the type of wrongful conduct that justifies imposing personal liability on a corporate officer. … Because liability of a corporate officer is not contingent on piercing the corporate veil, Plaintiffs have met their burden of pleading a claim against [the defendant].").

4.75.4  As the sole member, manager, and employee of Asset Realty, Storey authorized, directed, and participated in the sending of the illegal text messages described in this Second Amended Complaint.

4.75.5  Storey was responsible for Asset Realty's business plan and for overseeing and directing the company's day-to-day operations.

4.75.6  Storey accepted the benefits of the illegal telemarketing alleged in this Second Amended Complaint by accepting commissions and royalties from new sales, despite knowing that the sales were generated through the sending of the illegal telemarketing text messages challenged here.

4.75.7  Storey had the authority and responsibility to prevent or correct the unlawful telemarketing practices alleged in this Second Amended Complaint and formulated, directed, controlled, and participated in the acts and practices of its agents that violate the CEMA and TCPA, including the acts and practices described in this Second Amended Complaint.

4.75.8  Despite having the ability to prevent the CEMA and TCPA violations alleged in this Second Amended Complaint, Storey failed to do so.

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 20
Case No. 21-2-08665-1

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

4.76    Under principles of personal liability, Storey is liable for the CEMA and TCPA violations alleged in this Second Amended Complaint.

**H.    The Anywhere Defendants substantially assist the transmission of commercial marketing text messages and are vicariously liable for the telemarketing violations alleged in this Second Amended Complaint.**

4.77    The Anywhere Defendants are one of the country's largest real estate conglomerates.

4.78    The Anywhere Defendants franchise a portfolio of well-known, industry-leading brokerage brands, including Century 21.

4.79    The Anywhere Defendants derive their real estate franchising revenues from royalties and marketing fees received under long-term franchise agreements, such as the Century 21 Franchise Agreement.

4.80    Royalties are based on a percentage of the franchisees' sales commission earned from closed home sales.

4.81    Because homeowners typically only contract with one real estate brokerage to assist them in buying or selling a home, and competition in the real estate market is fierce, the Anywhere Defendants have an incentive to obtain as many home listings as possible to increase their profits.

4.82    The Anywhere Defendants' franchise offices do not operate independently. Rather, each one is run in accordance with the Anywhere Defendants' policies and procedures to ensure consistency in customer service from office to office, and to protect the reputation of the Anywhere Defendants' brands, including the Century 21 brand. Each Century 21 office is run by a managing broker, who reports to the Anywhere Defendants or one or more of the subsidiaries and alter-egos and takes steps to ensure that the Century 21 office is run in accordance with the Anywhere Defendants' policies and procedures.

4.83    The Anywhere Defendants disseminate policies, procedures, and techniques designed to enable their franchises offices to compete more effectively in the real estate market.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

4.84    The Anywhere Defendants know that it is standard practice in the real estate business to use telemarketing, including the use of text messaging, to generate business.

4.85    The Anywhere Defendants know that the Asset Defendants use text messaging to generate business for the Asset Defendants' Century 21 franchise.

4.86    In fact, as described above, Storey's company Pipeline Platform, LLC entered into a license agreement with the Anywhere Defendants' predecessor, Realogy Holdings Corp.

4.87    As of October 2020, the Asset Defendants' lead generation system, Pipeline Platform was licensed and used by Realogy and its franchise owners throughout the United States, including Asset in Washington.

4.88    As of October 2020, the Pipeline Platform system contained text messaging functionality.

4.89    Because Realogy licensed and used the Pipeline Platform system, the Anywhere Defendants know precisely how it works, including that users are not required to obtain clear and affirmative consent from recipients to receive commercial, marketing text messages.

4.90    The Anywhere Defendants substantially assisted in the transmission of illegal commercial text messages through their subsidiary and alter-ego Century 21.

4.91    Century 21 has developed a franchise system for the promotion and assistance of independently owned and/or operated real estate brokerage offices that includes policies, procedures and techniques designed to enable such offices to compete more effectively in the real estate market. Century 21 calls this system the "Century 21 System."

4.92    The Century 21 System includes, but is not limited to, common use and promotion of certain Century 21 Marks, copyrights, trade secrets, centralized advertising programs, recruiting programs, referral programs and sales and management training programs.

4.93    The franchise agreement that Century 21 and Asset executed in 2015 ("Century 21 Franchise Agreement") authorizes Asset to operate one or more real estate brokerage office(s) as Century 21 offices.

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 22
Case No. 21-2-08665-1

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

4.94    Century 21 requires Asset to use a lead management program designated by Century 21. *See* Exhibit B (Century 21 Franchise Agreement) at § 9.5.

4.95    The Century 21 Franchise Agreement further requires Asset to "use your best efforts to properly manage and service any leads provided to you through the lead management program and train all employees and independent sales associates on lead management through the program."

4.96    As part of the Century 21 Franchise Agreement, Century 21 consented to Asset Realty Group, LLC operating Pipeline Platform, LLC, initially as a separate business. *See* Exhibit B (Century 21 Franchise Agreement) at Addendum § 25.6.

4.97    As part of the Century 21 Franchise Agreement, Century 21 took a security interest in Asset Realty Group, LLC's assets, including its accounts, account receivables, and contract rights. *See* Exhibit B (Century 21 Franchise Agreement) at Exhibit F.

4.98    Century 21 knowingly permitted the Asset Defendants and their agents to use the Pipeline Platform lead generation system, including its texting functionality, to generate business and revenue for Century 21.

4.99    Century 21 knowingly permitted the Asset Defendants and their agents to use Century 21 marks in the illegal text messages, including but not limited to "Century21, " "C21," and "Century21 Northwest."

4.100   In fact, the Century 21 Franchise Agreement specifically provides, "All advertising must be reviewed by Century 21." Exhibit B (Century 21 Franchise Agreement) at § 11.8.1.

4.101   Century 21 reserved under the Century 21 Franchise Agreement a "[g]eneral right to terminate [the contract] for conduct that impairs the brand."

4.102   Although Century 21 knew the Asset Defendants, through Asset's brokers and agents, sent illegal text messages to Washington citizens, Century 21 did not terminate the Century 21 Franchise Agreement until late 2023 or early 2024.

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 23
Case No. 21-2-08665-1

4.103   Century 21 further enabled the Asset Defendants to generate leads through illegal advertising text messages by loaning Asset approximately $290,000 to operate its Century 21 franchise.

4.104   Although Century 21 knew the Asset Defendants' agents were sending illegal text messages to potential customers in Washington, Century 21 did not require the Asset Defendants or their agents to obtain recipients' clear and affirmative consent in advance to receive the advertising text messages and consciously avoided knowing whether the Asset Defendants were sending commercial marketing text messages to Washington residents without obtaining recipients' clear and affirmative consent in advance to receive marketing text messages.

4.105   The Anywhere Defendants benefited financially from the illegal marketing text messages because they received commissions and royalties from each real estate sale that resulted from a lead generated by the illegal text messages that Defendants assisted in sending.

4.106   Under ordinary principles of vicarious liability, including classic agency, apparent authority, and ratification, the Anywhere Defendants are liable for the CEMA and TCPA violations alleged in this Second Amended Complaint because they expressly or impliedly authorized, or ratified the agents' practices that violated the CEMA and TCPA.

I.      **The Anywhere Defendants have abused the corporate form, and piercing the corporate veil is in the interest of justice.**

4.107   The Anywhere Defendants utilize a complicated web of divisions, subsidiaries, franchises, and shell companies and rely heavily on the Century 21 brand and Century 21 agents to conduct business. They operate as alter-egos of each other and their related subsidiaries, divisions, franchises, and shell companies, and together these entities authorize and ratify the work, including the texting strategies, of Century 21 agents performed on their behalf for their profits.

4.108   The Anywhere Defendants' public materials provide little information to be able to discern exactly how they are structured. But what is known suggests that they abuse the

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 24
Case No. 21-2-08665-1

corporate form, and unless the corporate veil is pierced the Anywhere Defendants might successfully avoid accountability for their CEMA and TCPA violations through their use of shell companies, confusing nomenclature, and/or the attempted classification of agents as "independent contractors."

4.109 The Anywhere Defendants appear to operate through a variety of undercapitalized shell corporations and wholly owned subsidiaries that exchange resources and do not observe the corporate form. To accomplish this, the Anywhere Defendants share the same base of operations at the Anywhere Headquarters with most, if not all, of their subsidiary companies. In sharing an address, employees of one can work for all, which allows the companies to share officers and directors, obtain services and resources from one another without adequate consideration, and maintain shared records.

4.110   In a recent filing with the SEC, the Anywhere Defendants submitted consolidated financials, stating that the terms "we" and "Anywhere" refer to "Anywhere Real Estate Inc., a Delaware corporation and its consolidated subsidiaries, including Anywhere Intermediate Holdings, LLC, a Delaware limited liability company ('Anywhere Intermediate') and Anywhere Real Estate Group LLC, a Delaware limited liability company ('Anywhere Group')." The Anywhere Defendants further stated that neither Anywhere, the indirect part of Anywhere Group, nor Anywhere Intermediate, the direct parent company of Anywhere Group, conducts any operations other than with respect to its respective direct or indirect ownership of Anywhere Group. As a result the consolidated financial positions, results of operations and cash flows of Anywhere, Anywhere Intermediate and Anywhere Group are the same."

4.111   The Washington Secretary of State website shows that Century 21 Real Estate LLC does business in Washington and is owned by Anywhere Real Estate Services Group LLC. Anywhere Real Estate Services Group LLC, in turn, is owned by Anywhere Real Estate Group LLC, which is owned by Anywhere Intermediate Holdings LLC, which is owned by Anywhere Real Estate, Inc.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

4.112 Seth Truwit is listed as the "governor" of Anywhere Real Estate Services Group LLC. Mr. Truwit also holds himself out as Senior Vice President and Assistant Corporate Secretary at Anywhere Real Estate, Inc. Mr. Truwitt appears to be a New York attorney whose employer is Anywhere Real Estate Inc. In other words, there is no separate "governor" for the Anywhere entities operating in Washington state.

4.113 As a result of the Anywhere Defendants' disregard of the corporate form, any recipient of a text message from a Century 21 agent would have no way to tell which entity is responsible. There is simply no way to tell if the text message was on behalf of Asset, Century 21, or one of the other Anywhere Defendants.

4.114 The Anywhere Defendants' confusing structure appears to be, at least in part, intentionally designed to confuse and obfuscate and thereby limit liability and exposure. It makes it impossible or near impossible for a victim of a tort committed under the Century 21 brand name to identify the responsible party. It directs those victims only to small subsidiaries that appear to be undercapitalized as they share offices with and/or borrow their primary officer—Seth Truwitt—from Anywhere Real Estate Inc., suggesting that they are not capitalized in such a way so as to permit them to maintain their own offices and officers, and that the corporate form is abused as they do not appear to have any true independence from Anywhere Real Estate Inc. The Anywhere Defendants then have those subsidiaries enter into franchise agreements with companies like Asset, which, in turn, retains "independent contractors" who then commit tens of thousands of torts by sending thousands of harassing text messages on behalf of Defendants.

4.115 The Anywhere Defendants created this confusing corporate structure while knowing that neither the individual agents sending the text messages on their behalf, nor the franchisees, subsidiaries, and shells with which the agents contract, have the capital to reimburse victims for violations of the CEMA. Thus, by structuring their enterprise this way, the Anywhere Defendants have created a structure which permits them to profit from the legal violations for which they maintain they should not be held responsible.

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 26
Case No. 21-2-08665-1

**J.      Plaintiff received multiple marketing text messages without his clear and affirmative consent, let alone his prior express written consent.**

4.116   Plaintiff is a Washington resident who regularly uses a cellular telephone with the capacity to send and receive transmissions of electronic text messages.

4.117   On or about February 22, 2021, the Defendants initiated or assisted in the transmission of the following unsolicited commercial electronic text message to Plaintiff's cellular telephone number:

February 22, 2021

Hi David, are you interested in selling the property over there on Caledonia Smt in Tacoma? This is Century21 Northwest.

4.118   On or about March 22, 2021, the Defendants initiated or assisted in the transmission of the following unsolicited commercial electronic text message to Plaintiff's cellular telephone number:

March 22, 2021

Hi David, we have a huge database of buyers who are interested in buying properties in Tacoma. Would you be

May 3, 2021

Hi David, would you like to acquire more properties in Tacoma? From: Century21

4.119   On or about May 3, 2021, the Defendants initiated or assisted in the transmission of the following unsolicited commercial electronic text message to Plaintiff's cellular telephone number:

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 27
Case No. 21-2-08665-1

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

4.120 On or about June 16, 2021, the Defendants initiated or assisted in the transmission of the following unsolicited commercial electronic text message to Plaintiff's cellular telephone number:

June 16, 2021

Hi, David. Are you interested in selling the property over there on Caledonia Smt in Tacoma? This is Century21 Northwest.

4.121 The above text messages were sent to promote Defendants' real estate brokerage services.

4.122 Plaintiff did not clearly and affirmatively consent in advance to receive the above commercial electronic text messages from the Defendants or their agents, assistants, or proxies.

4.123 Defendant Asset initiated the transmission of these text messages.

4.124 As described above, Defendants initiated or provided substantial assistance or support that enabled their agents, assistants, or proxies to formulate, compose, send, originate, initiate, or transmit unsolicited commercial electronic text messages to targeted recipients, including the Plaintiff, without first obtaining those recipients' clear and affirmative consent to receive such messages.

4.125 As described above, Defendants provided substantial assistance or support that enabled their agents, assistants, or proxies to formulate, compose, send, originate, initiate, or transmit unsolicited commercial electronic text messages to targeted recipients, including the Plaintiff, knowing they intended to engage in these practices, which violate the CPA.

4.126 Defendants, directly or through their agents, assistants, or proxies, initiated or assisted in the transmission of unsolicited commercial electronic text messages to the cellular telephones of hundreds and possibly thousands of Washington residents without first obtaining their clear and affirmative consent to receive such messages.

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 28
Case No. 21-2-08665-1

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

4.127  As a result of the Defendants' acts and omissions, Plaintiff and members of the proposed classes have suffered injuries-in-fact, including invasion of privacy and wasted time and attention tending to unsolicited and unwanted junk text messages.

**V.      CLASS ALLEGATIONS**

5.1    Pursuant to CR 23(a) and CR 23(b)(3), Plaintiff brings his claims on behalf of the following Classes.

5.2    The "CEMA Class" consists of:

(a)    All persons, as that term is defined in RCW 19.190.010(11) and RCW 19.86.010(1);

(b)    to whose telephone numbers Defendants initiated or assisted in the transmission of one or more commercial electronic text messages for the purpose of promoting Asset Realty LLC d/b/a Century 21 Northwest's real estate services;

(c)    where such message was sent while such person was a Washington citizen; and

(d)    while the number to which the message was sent was assigned to a cellular telephone or pager service that is equipped with short message capability or any similar capability allowing the transmission of text messages;

(e)    without obtaining the recipients' clear and affirmative consent to receive messages in advance of sending the text message;

(f)    within the previous four (4) years;

(g)    through the date that the CEMA Class is certified.

5.3    The "TCPA Class" consists of:

All persons in the State of Washington who received more than one text message made by or on behalf of Defendants in connection with the Century 21 brand in a 12-month period on a residential phone number with an area code 206, 253,

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 29
Case No. 21-2-08665-1

360, 425, 564, or 509 that appeared on the National Do Not Call Registry at least 31 days before the date the text message was sent.

5.4     Excluded from the Classes are the Defendants and all officers, members, partners, managers, directors, and employees of the Defendants and their respective immediate families, and legal counsel for all parties to this action and all members of their immediate families.

5.5     This action has been brought, and may be properly maintained, as a class action pursuant to the provisions of CR 23, because there is a well-defined community interest in the litigation:

(a)     Numerosity:  The Classes defined above are so numerous that joinder of all members would be impractical. The Defendants serve an actual and potential customer base of millions of individuals in Washington to whom the Defendants regularly transmit or assist in the transmission of unsolicited commercial electronic text messages, including text messages sent to telephone numbers listed on the NDNCR.

(b)     Commonality:  There are numerous questions of law and fact common to Plaintiffs and members of the Classes. The common questions of law and fact include, but are not limited to:

a.  Whether Asset initiated the transmission of commercial electronic text messages to citizens of Washington state in violation of RCW 19.190.060;

b.  Whether Defendants assisted the transmission of commercial electronic text messages to citizens of Washington state in violation of RCW 19.190.060;

c.  Whether a violation of RCW 19.190.060 establishes all the elements of a claim under Washington's Consumer Protection Act, RCW 19.86 *et seq.*;

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 30
Case No. 21-2-08665-1

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

d.  Whether Defendants have established written procedures to comply with NDNCR registrations;

e.  Whether Defendants train personnel on any procedures to comply with NDNCR regulations;

f.  Whether Defendants use any process to prevent telephone solicitations of any number on the NDNCR and maintain records documenting the process;

g.  Whether Defendants or their agents have violated the TCPA by placing two or more telemarketing text messages within a twelve-month period to telephone numbers that were on the NDNCR for at least 31 days before the texts were sent;

h.  Whether Defendants are vicariously liable for violations of the CEMA and TCPA;

i.  Whether Defendant Storey is personally liable in his capacity as an agent of Asset Realty and the Anywhere Defendants for illegal text messages that were sent on behalf of Asset Realty, the Anywhere Defendants, and Asset Realty and the Anywhere Defendants' agents and not on Storey's own behalf;

j.  Whether the Anywhere Defendants have abused the corporate form such that the corporate veil should be pierced;

k.  Whether Plaintiffs and the proposed Classes are entitled to an injunction enjoining Defendants from sending the unlawful texts in the future; and

l.  The nature and extent of Class-wide injury and damages.

(c)  Typicality:  Plaintiff's claims are typical of the claims of the Class members. Plaintiff and all members of the Classes have claims arising out of the Defendants'

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 31
Case No. 21-2-08665-1

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

common, uniform course of conduct by Defendants and are based on the same legal and remedial theories.

(d)    Adequacy:  Plaintiff will fairly and adequately protect the interests of the Class members insofar as Plaintiff has no interests that are averse to the absent Class members. Plaintiff is committed to vigorously litigating this matter.  Plaintiff has also retained experienced and competent legal counsel who is able to conduct the litigation.  Neither the Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue the instant class action lawsuit.

(e)    Predominance:  Defendants have a standard practice of assisting the transmission of commercial electronic text messages to subscribers of cellular telephone numbers who are citizens of Washington State. The common issues arising from this conduct predominate over any individual issues. Adjudication of these issues in a single action has important and desirable advantages of judicial economy.

(f)    Superiority:  A class action is superior to the other available means for the fair and efficient adjudication of this controversy, because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender. The members of the Classes are readily identifiable from Defendants' records and there will be no significant difficulty in the management of this case as a class action.

(g)    Injunctive relief:  Defendants' conduct is uniform as to all members of the Classes. Defendants have acted or refused to act on grounds that apply generally to the Classes, so that final injunctive relief or declaratory relief is appropriate with respect to the Classes as a whole. Plaintiff further alleges, on information

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 32
Case No. 21-2-08665-1

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

and belief, that the texts described in the Complaint are substantially likely to continue in the future if an injunction is not entered.

5.6     Certification of the Classes under CR 23(b)(3) is also appropriate in that the questions of law and fact common to members of the Classes predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

5.7     Plaintiff's claims apply to the Defendants' illegal acts and omissions occurring in the four years preceding the filing of this case, through the date that the Classes are certified.

## VI.     FIRST CAUSE OF ACTION

**Violation of Washington's Commercial Electronic Mail Act**
**RCW 19.190, *et seq.***
(For Injunctive Relief Only on Behalf of Plaintiff and the CEMA Class)

6.1     Plaintiff incorporates all of the foregoing allegations as if fully set forth herein.

6.2     Washington's CEMA prohibits any "person," as that term is defined in RCW 19.190.010(11), from initiating or assisting in the transmission of an unsolicited commercial electronic text message to a Washington resident's cellular telephone phone or similar device, unless the recipient has clearly and affirmatively consented in advance to receive such text messages. RCW 19.190.070(1)(b).

6.3     Defendants are "persons" within the meaning of the CEMA, RCW 19.190.010(11).

6.4     Defendant Asset initiated the transmission of one or more commercial electronic text messages to Plaintiff and to CEMA Class members without first obtaining those recipients' clear and affirmative consent to receive such messages.

6.5     Defendants assisted in the transmission of one or more commercial electronic text messages to Plaintiff and to CEMA Class members without first obtaining those recipients' clear and affirmative consent to receive such messages.

6.6     The acts and omissions of the Defendants violated RCW 19.190.060(1).

6.7     Defendants are vicariously liable for the acts and omissions of Defendants' agents and subagents.

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 33
Case No. 21-2-08665-1

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

6.8     The Anywhere Defendants are vicariously liable for the actions and omissions of the Asset Defendants and their agents and subagents.

6.9     Defendant Storey is personally liable for the actions and omissions of Defendant Asset and its agents and subagents.

6.10     Pursuant to RCW 19.190.090(1), a recipient of a commercial electronic text message sent in violation of the CEMA is entitled to injunctive relief to enjoin further violations.

6.11     As a result of the Defendants' acts and omissions, Plaintiff and members of the putative CEMA Class are entitled to injunctive relief prohibiting the Defendants from initiating or assisting in the transmission of unsolicited commercial electronic text messages without first obtaining targeted recipients' clear and affirmative consent to receive such messages.

## VII.    SECOND CAUSE OF ACTION

**Per Se Violation of Washington's Consumer Protection Act**
**RCW 19.86, *et seq.***

(For Statutory Damages and Injunctive Relief on Behalf of Plaintiff and the CEMA Class)

7.1     Plaintiff incorporates all of the foregoing allegations as if fully set forth herein.

7.2     Plaintiff and CEMA Class members are "persons" within the meaning of the CPA, RCW 19.86.010(1).

7.3     Defendants violated the CEMA by initiating or assisting in the transmission of unsolicited commercial electronic text messages to Plaintiff and CEMA Class members' cellular telephones or similar devices.

7.4     Defendants are vicariously liable for the acts and omissions of Defendants' agents and subagents.

7.5     The Anywhere Defendants are vicariously liable for the actions and omissions of the Asset Defendants and their agents and subagents.

7.6     Defendant Storey is personally liable for the actions and omissions of Defendant Asset and its agents and subagents.

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 34
Case No. 21-2-08665-1

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

7.7     A violation of the CEMA establishes all five elements of Washington's Consumer Protection Act as a matter of law. RCW 19.190.100 & *Lyft*, 189 Wn.2d at 732.

7.8     Defendants' violations of the CEMA are unfair or deceptive acts or practices that occur in trade or commerce under the CPA. RCW 19.190.100.

7.9     Defendants' unfair or deceptive acts or practices vitally affect the public interest and thus impact the public interest for purposes of applying the CPA. RCW 19.190.100.

7.10     Pursuant to RCW 19.190.040(1), damages to each recipient of a commercial electronic text message sent in violation of the CEMA are the greater of $500 or actual damages, which establishes the injury and causation elements of a CPA claim as a matter of law. *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 732, 406 P.3d 1149, 1155 (2017).

7.11     As a result of the Defendants' actions and omissions, the Plaintiff and members of the putative CEMA Class are each entitled to recover statutory damages of at least $500 for each CEMA violation committed by the Defendants, plus actual damages, costs and attorneys' fees as provided by applicable statutes.

7.12     As a result of the Defendants' acts and omissions, the Plaintiff and members of the putative CEMA class are entitled to injunctive relief prohibiting the Defendants from initiating or assisting in the transmission of unsolicited commercial electronic text messages without first obtaining targeted recipients' clear and affirmative consent to receive such messages.

## VIII.     THIRD CAUSE OF ACTION

### Violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)

(For Statutory Damages and Injunctive Relief on Behalf of Plaintiff and the TCPA Class)

8.1     Plaintiff incorporates all of the foregoing allegations as if fully set forth herein.

8.2     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of 47 C.F.R. § 64.1200(c), by initiating more than one telephone solicitation within a

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 35
Case No. 21-2-08665-1

12-month period to Plaintiff and members of the TCPA Class who have registered their telephone numbers with the National Do Not Call Registry.

8.3     As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violations of 47 C.F.R. § 64.1200(c), Plaintiff and members of the TCPA Class are entitled to an award of (a) $500 in statutory damages for each and every call initiated to them, after registering their telephone numbers with the National Do Not Call Registry, pursuant to 47 U.S.C. § 227(c)(5)(B), or (b) $1,500 for each knowing or willful violation.

### IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.     Declaring that this action is properly maintainable as a class action and certifying the Plaintiff as Class representative and Andrew P. Green of Green & Wilmot, PLLC and Beth E. Terrell, Jennifer Rust Murray, and Eden Nordby of Terrell Marshall Law Group PLLC, as Class counsel;

B.     Granting declaratory relief finding that the Defendants' conduct violated Washington's CEMA, CPA, and the federal TCPA;

C.     Granting injunctive relief prohibiting the Defendants from initiating or assisting in the transmission of unsolicited commercial electronic text messages to Washington citizens;

D.     Awarding Plaintiff and the CEMA Class statutory damages in the amount of $500 for each violation of the CEMA pursuant to RCW 19.190.040(1) and treble damages pursuant to RCW 19.86.090;

E.     Awarding Plaintiff and the TCPA Class statutory damages in the amount of $500 for each violation of the TCPA and $1,500 for each knowing violation;

F.     Awarding costs in this action, including reasonable attorneys' fees and expenses;

G.     Permitting amendment of this Amended Complaint to conform to the evidence developed during the litigation; and

H.     Such other and further relief as the Court may deem just and equitable.

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 36
Case No. 21-2-08665-1

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

RESPECTFULLY SUBMITTED AND DATED this 10th day of January, 2025.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/Jennifer Rust Murray, WSBA #36983
Beth E. Terrell, WSBA #26759
Email: bterrell@terrellmarshall.com
Jennifer Rust Murray, WSBA #36983
Email: jmurray@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

Andrew P. Green, WSBA #32742
Email: andy@green-wilmot.com
GREEN & WILMOT, PLLC
1919 N. Pearl Street, Suite B-3
Tacoma, Washington 98046
Telephone: (253) 625-7300
Facsimile: (253) 292-0832

Anthony I. Paronich, *Admitted Pro Hac Vice*
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 485-0018

*Attorneys for Plaintiff*

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 37
Case No. 21-2-08665-1

## DECLARATION OF SERVICE

I, Jennifer Rust Murray, hereby certify that on January 10, 2025, I caused true and correct copies of the foregoing to be served via the means indicated below:

Francis S. Floyd, WSBA #10642
Email: ffloyd@NWTrialAttorneys.com
Adrienne E. Harris, WSBA #28784
Email: aharris@nwtrialattorneys.com
FLOYD PFLUEGER KEARNS
NEDDERMAN & GRESS, P.S.
3101 Western Avenue, Suite 400
Seattle, Washington 98121
Telephone: (206) 441-4455

☐ U.S. Mail, postage prepaid
☐ Hand Delivered via Messenger Service
☐ Overnight Courier
☐ Facsimile
☐ Electronic Mail
☒ Pierce County LINX Electronic Filing System

*Attorneys for Chad Barron Storey*

A. Grant Lingg, WSBA #24227
Email: glingg@foum.law
Alexander W. Hatch, WSBA #62212
Email: ahatch@foum.law
FORSBERG & UMLAUF, P.S.
901 Fifth Avenue, Suite 1400
Seattle, Washington 98164
Telephone: (206) 689-8500

☐ U.S. Mail, postage prepaid
☐ Hand Delivered via Messenger Service
☐ Overnight Courier
☐ Facsimile
☐ Electronic Mail
☒ Pierce County LINX Electronic Filing System

*Attorneys for Asset Realty, LLC d/b/a Century 21 Northwest*

Peter A. Talevich, WSBA #42644
Email: peter.talevich@klgates.com
Tyler K. Lichter, WSBA #51090
Email: tyler.lichter@klgates.com
Joseph Wylie
Email: joseph.wylie@klgates.com
K&L GATES, LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Telephone: (206) 623-7580
Facsimile: (206) 623-7022

☐ U.S. Mail, postage prepaid
☐ Hand Delivered via Messenger Service
☐ Overnight Courier
☐ Facsimile
☐ Electronic Mail
☒ Pierce County LINX Electronic Filing System

*Attorneys for Defendants Century 21 Real Estate LLC, Anywhere Real Estate Inc., Anywhere Real Estate Group, LLC, Anywhere*

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 38
Case No. 21-2-08665-1

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Real Estate Services Group LLC, and*
*Anywhere Intermediate Holdings LLC*

I declare under penalty of perjury under the laws of the State of Washington and the United States that the foregoing is true and correct.

DATED this 10th day of January, 2025.

By: /s/ Jennifer Rust Murray, WSBA #36983
Jennifer Rust Murray, WSBA #36983

SECOND AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF - 39
Case No. 21-2-08665-1

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com