THE HONORABLE LAUREN KING

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DAVID J. KOVANEN, and individual, and all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ASSET REALTY, LLC d/b/a CENTURY 21 NORTHWEST, a Washington limited liability company; CHAD BARRON STOREY, individually; CENTURY 21 REAL ESTATE LLC; ANYWHERE REAL ESTATE INC.; ANYWHERE REAL ESTATE GROUP, LLC; ANYWHERE REAL ESTATE SERVICES GROUP LLC; ANYWHERE INTERMEDIATE HOLDINGS LLC,<br><br>Defendants. | NO. 3:25-cv-05078-LK<br><br>**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**NOTED FOR CONSIDERATION:**<br>JUNE 6, 2025 |

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................... 1

II.   BACKGROUND ..................................................................................................... 2

      A.    Plaintiff's claims ...................................................................................... 2

      B.    The Litigation ........................................................................................... 3

      C.    Settlement negotiations .......................................................................... 4

      D.    The proposed settlement ........................................................................ 4

            1.    The proposed Settlement Class ................................................... 5

            2.    The settlement relief .................................................................... 5

            3.    Release .......................................................................................... 7

            4.    Objections and exclusions ........................................................... 7

            5.    The proposed notice plan ............................................................ 8

III.  ARGUMENT .......................................................................................................... 8

      A.    The proposed settlement should be preliminarily approved ................. 8

            1.    The settlement is the result of arm's-length, non-collusive
                  negotiations .................................................................................. 9

            2.    The settlement's relief is adequate considering the strength of
                  Plaintiff's case, the risks of continued litigation, and
                  Defendants' finances .................................................................. 11

            3.    The settlement will be fairly distributed to Settlement Class
                  Members ..................................................................................... 13

            4.    Plaintiff's Counsel will request approval of a fair and
                  reasonable fee ............................................................................ 13

            5.    The reaction of the Settlement Class to the proposed
                  settlement ................................................................................... 14

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

B.    Certification of the Settlement Class is appropriate ........................................... 14

    1.    The Settlement Class satisfies the requirements of Rule 23(a)............... 14

    2.    The Settlement Class satisfies the requirements of Rule 23(b)(3) ..................................................................................................... 16

C.    The Notice Plan complies with Rule 23(e) and due process................................ 17

IV.    CONCLUSION................................................................................................................. 18

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

**I.     INTRODUCTION**

2       Plaintiff David Kovanen received unsolicited text messages asking if he was interested in

3   selling his home or buying more property. He alleges that Defendants transmitted or

4   substantially assisted in transmitting these texts in violation of the Washington Commercial

5   Electronic Mail Act (CEMA), Washington Consumer Protection Act (CPA), and federal Telephone

6   Consumer Protection Act (TCPA). He brought these claims on behalf of a proposed class of

7   Washington residents who also received the texts. After over three years of contentious

8   litigation, the parties negotiated a class-wide settlement of the claims.

9       Plaintiff respectfully seeks preliminary approval of the settlement, which requires

10  Defendants to establish a $700,000 non-reversionary Settlement Fund, to be paid by Century

11  21 Real Estate, LLC and General Star National Insurance Company for the benefit of Plaintiff and

12  over 95,000 Settlement Class Members. Settlement Class Members who submit a claim form

13  will receive a pro rata cash payment from the Fund estimated to be $28-$55. The Settlement

14  Fund also will be used to pay settlement administration expenses estimated to be $110,000,

15  any court-approved attorneys' fees, and the reasonable out-of-pocket litigation costs Plaintiff's

16  counsel incurred.

17      Plaintiff's counsel are aware that the $28-$55 cash is less than the $500-$1,500 per text

18  amount that Settlement Class Members theoretically could obtain under the Commercial

19  Electronic Mail Act (CEMA), RCW 19.190, and the Telephone Consumer Protection Act (TCPA),

20  47 U.S.C. § 227 should Plaintiff prevail at trial. This settlement payment, however, is within the

21  range of other similar class action settlements approved by courts. Moreover, the primary

22  defendant in this case—Asset Realty LLC—has been administratively dissolved and is in

23  bankruptcy and its principal, Chad Barron Storey, has been sued for millions of dollars in a

24  separate matter. Collecting a large judgment against either Asset or Storey would be difficult, if

25  not impossible.

26      Asset Realty's franchisor, Century 21 Real Estate LLC, and its parent and affiliated

27  companies (collectively "Anywhere Defendants") may be able to satisfy a judgment. But the

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL - 1
CASE NO. 3:25-cv-05078-LK

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  Anywhere Defendants insist they knew nothing about Asset's unlawful texting and, even if they

2  knew, lacked any power to stop the texts. Plaintiff's counsel have over a decade of experience

3  litigating CEMA and TCPA cases and know how difficult it is to hold a franchisor liable for the

4  conduct of its franchisee, especially where, as here, the franchisee is independently owned and

5  operated. Evidence exists that the Anywhere Defendants should have known about the illegal

6  texts, but proving those facts would have been difficult, time-consuming, and expensive. As a

7  result, Plaintiff agreed to the settlement, which puts money in Settlement Class Members'

8  pockets now and avoids the risk of recovering nothing at trial.

9          The settlement also contains significant prospective relief designed to prevent illegal

10  text messages from being sent in the future. Storey has agreed neither he nor any company he

11  controls will send texts to any class member without first obtaining clear and affirmative

12  consent. Storey also has agreed to permanently cease operation of Asset's lead management

13  program, allow the program website and underlying files to be deleted by AWS, which currently

14  hosts the program, and delete related instructional videos.

15          Because the settlement meets all the criteria for approval under Rule 23, Plaintiff

16  requests the Court grant his motion to allow the Settlement Class to receive notice of the

17  proposed settlement, and schedule a Final Approval Hearing to determine whether the

18  settlement is fair, reasonable, and adequate and should be finally approved. The settlement

19  also must be approved by the Bankruptcy Court overseeing the Asset bankruptcy.

20                                    II.     BACKGROUND

21  **A.    Plaintiff's claims**

22          Plaintiff filed this lawsuit in December 2021 after receiving several unsolicited text

23  messages from "Century21" asking if he was interested in selling his home or buying more

24  property. He initially sued Asset Realty, LLC, which was doing business as Century 21

25  Northwest, and its sole member and manager, Chad Barren Storey ("Asset Defendants"), on

26  behalf of a proposed class of similarly situated Washingtonians, alleging that they substantially

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  assisted real estate agents in transmitting unsolicited commercial text messages to class

2  members in violation of the CEMA and CPA. Murray Decl. ¶12.

3        In September 2023, Plaintiff amended his complaint to add the Anywhere Defendants.

4  *Id.* ¶13. Plaintiff filed a Second Amended Complaint alleging that Defendants also violated the

5  TCPA's National Do-Not-Call provisions by sending text messages to telephone numbers on the

6  National DNC Registry without first obtaining prior, express, written consent. *Id.* ¶14. The

7  Anywhere Defendants removed this case to federal court on February 3, 2025. Dkt. 1.

8  **B.    The Litigation**

9        It is an understatement to say that the litigation has been hard fought. When the Asset

10  Defendants failed to respond to his complaint, Plaintiff moved for an order of default. *Id.* ¶15.

11  This prompted the Asset Defendants to move to dismiss, and Plaintiff prevailed on the motion.

12  *Id.* ¶16. Discovery disputes have been so contentious that, after granting Plaintiff's motion to

13  compel responses and entering a stipulated protective order relating to some of the discovery

14  disputes, the Court appointed Judge Paris Kallas (Ret.) to serve as discovery master. *Id.* ¶17.

15  After several conferences with Judge Kallas that resulted in an order requiring Asset to

16  supplement its discovery responses, multiple meetings between counsel for the parties about

17  Asset's failure to comply with that order, and Judge Kallas's direction that Asset respond to

18  Plaintiff's request for assistance with the ongoing discovery disputes, Asset filed a chapter 11

19  bankruptcy petition on February 23, 2023, in the Western District of Washington Bankruptcy

20  Court. *Id.* The bankruptcy was converted to a chapter 7 in December 2023. *Id.*

21        With his discovery efforts as to Asset automatically stayed by the bankruptcy filing,

22  Plaintiff served written discovery and a deposition notice on Storey, who was not a debtor in

23  the bankruptcy. *Id.* ¶19. Asset's bankruptcy lawyer took the position that the automatic

24  bankruptcy stay barred Plaintiff from seeking discovery from Storey, who, through new counsel,

25  removed this case to the bankruptcy court. *Id.* On July 11, 2023, the bankruptcy court granted

26  Plaintiff's motions for abstention and to remand the case back to state court, lifting the stay as

27  to both Asset and Storey. *Id.*

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    Plaintiff continued pursuing discovery and, after analyzing documents filed in the

2 bankruptcy proceeding, amended his complaint to add the Anywhere Defendants, alleging that

3 they substantially assisted in Asset's operation, including the transmission of the texts at issue

4 in this case. *Id.* ¶20. Plaintiff also participated in the bankruptcy proceedings to protect his and

5 the proposed class's creditor claim and ensure that Asset retained evidence pertinent to his

6 claims in this case. *Id.* ¶21.

7    One focus of Plaintiff's discovery efforts was obtaining the data he needed to show that

8 Defendants sent illegal text messages to Washington residents without first obtaining "clear

9 and affirmative" consent. These efforts required assistance from Judge Kallas. *Id.* ¶22.

10 **C.      Settlement negotiations**

11    Plaintiff and the Asset Defendants mediated in August 2022 with assistance from

12 Honorable Ronald E. Cox (Ret.). The case did not settle. *Id.* ¶23. After Asset filed for chapter 11

13 bankruptcy protection, Kovanen, Asset, and Storey participated in a settlement conference with

14 Bankruptcy Judge Honorable Mary Jo Heston. The settlement conference with Judge Heston,

15 which required two days to complete, was unsuccessful, but the parties continued negotiations

16 through 2024. *Id.* The parties made progress, but could not agree.

17    Plaintiff filed a motion for class certification in Pierce County Superior Court in January

18 2025. *Id.* ¶24. He filed his Second Amended Complaint the same day. *Id.* After the case was

19 removed, the parties participated in a second settlement conference, this time with Judge

20 Theresa Fricke. Dkt. 25. The parties agreed to material settlement terms and finalized their

21 agreement on May 14, 2025. *Id.* ¶25.

22 **D.      The proposed settlement**

23    The complete terms of the parties' proposed settlement are described in the Settlement

24 Agreement and Release of Claims (SA) attached as Exhibit 1 to the Murray Declaration. Plaintiff

25 is submitting an unexecuted copy of the Settlement Agreement with this motion because the

26 parties reached agreement too late in the day to collect signatures. All parties have agreed by

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  email and Plaintiff will supplement this filing with a fully executed agreement when all the

2  signatures have been collected.

3       1.    <u>The proposed Settlement Class</u>

4      The proposed Settlement Class is defined as follows:

5
6
7
8
9
10
11
> All persons, as that term is defined in RCW 19.190.010(11) and RCW 19.86.010(1); (1) to whose telephone numbers Defendants initiated or assisted in the transmission of one or more commercial electronic text messages for the purpose of promoting Asset Realty LLC d/b/a Century 21 Northwest's real estate services; (2) where such message was sent while such person was a Washington citizen; (3) and while the number to which the message was sent was assigned to a cellular telephone or pager service that is equipped with short message capability or any similar capability allowing the transmission of text messages; (4) without obtaining the recipients' clear and affirmative consent to receive messages in advance of sending the text message; (5) between December 10, 2017 through June 17, 2022.

12
13
14
> The Settlement Class does not include Defendants, any entity that has a controlling interest in Defendants, and Defendants' current or former directors, officers, counsel, and their immediate families. The Settlement Class also does not include any persons who validly request exclusion from it.

15  SA §1.19. Plaintiff's expert identified telephone numbers from data Asset produced during

16  discovery that he alleges are associated with Settlement Class Members. SA §1.5. ("Class List").

17       2.    <u>The settlement relief</u>

18          *a.*    *Settlement awards*

19      General Star and Century 21 Real Estate LLC will pay $700,000 to establish the

20  Settlement Fund. SA §2.1. The $700,000 includes $547,869.82, which are the remaining policy

21  limits on a wasting insurance policy that may provide coverage for Plaintiff's claims. It also

22  includes a $152,130.18 payment from Century 21 Real Estate, LLC. SA §2.1. After payment of

23  Court-approved notice and settlement administration costs, attorneys' fees and litigation costs,

24  the Settlement Fund will be distributed pro rata to Settlement Class Members who submit valid

25  and timely Claim Forms. SA §§4.1-4.8. Any Claimant Awards that remain uncashed after 180

26  days will be redistributed on a pro rata basis to all Claimants who cashed their check or

27  otherwise successfully received payment, if feasible. If there are any Claimant Awards

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   remaining uncashed 180 calendar days after issuance of the redistribution payments, those

2   amounts will be contributed to the Legal Foundation of Washington. SA §4.6.

3          If attorneys' fees, litigation costs, and administration costs are approved as requested,

4   the net fund available to pay claimants will be approximately $265,902. Murray Decl. ¶27.

5   There are 95,862 telephone numbers on the Class List. *Id.* ¶28. Plaintiff's counsel that between

6   five percent and ten percent of Settlement Class Members will file a claim. If five percent of

7   Settlement Class Members submit a valid claim, the estimated payment will be approximately

8   $55. If 10 percent submit a valid claim, the estimated payment will be approximately $28. *Id.*

9          b.     *Non-monetary relief*

10         Storey has agreed to permanently cease operation of Asset's lead management

11  program, allow the website www.pipelineplatform.com and underlying files to be deleted, and

12  delete related videos from the YouTube channel @AssetChad "Conversion Coaching AI." SA

13  §2.6. Storey has agreed that he and any company he controls will not text any Settlement Class

14  Member without first obtaining clear and affirmative consent. SA §2.6.12.

15         c.     *Administration costs*

16         Following a competitive bid process, Plaintiff selected Continental DataLogix LLC (CDL)

17  as the Settlement Administrator. Murray Decl. ¶30. Plaintiff's counsel will provide the Class List

18  to CDL, who will compile the Notice List and provide notice to Settlement Class Members as set

19  forth in the Settlement Agreement. SA §3.3. The Settlement Administrator will manage the

20  Settlement Website and respond to inquiries from Settlement Class Members. The Settlement

21  Administrator will also process Claim Forms, report on exclusion requests, establish the

22  Settlement Fund, and distribute the Settlement Fund as set forth in the Settlement Agreement

23  and the Court's Final Approval Order. SA §§3.3-3.5, 4.1-4.7. The Settlement Administrator

24  estimates its costs will total approximately $107,165. Marr Decl. ¶30.

25         d.     *Attorneys' fees and litigation costs*

26         Plaintiff's counsel will seek Court approval of an attorneys' fee award of $231,000,

27  which is one-third of the $700,000 Settlement Fund, plus reimbursement of litigation costs

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    which to date are approximately $93,098. Murray Decl. ¶¶31-33. Plaintiff's counsel will file

2    their fee petition and post it on the Settlement Website at least 30 days before the objection

3    deadline.

4           3.    <u>Release</u>

5           The scope of the release is tailored to the claims arising out of the factual predicate

6    alleged in Plaintiff's Second Amended Complaint. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590

7    (9th Cir. 2010) (a settlement agreement may preclude future claims only where the released

8    claim is "based on the identical factual predicate as that underlying the claims in the settled

9    class action"). The claims Plaintiff and Settlement Class Members are releasing include:

10                  [A]ll claims and causes of action, including, for the avoidance of
11                  doubt, any claims that have been, could have been, or may or could
                    be asserted in the Chapter 7 Case and/or against the Chapter 7
12                  Estate, that are based on the same factual predicate as that
                    underlying the claims alleged in Plaintiff's Second Amended
13                  Complaint—i.e. the sending of commercial text messages to
                    Washington residents without their clear and affirmative consent
14                  between December 10, 2017 and June 17, 2022—including all
                    claims that were or could have been brought under Washington's
15                  Commercial Electronic Mail Act, RCW 19.190 et seq., Washington's
                    Consumer Protection Act, RCW 19.86 et seq., and the federal
16                  Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq.
                    Plaintiff's Released Claims also includes a release of all claims the
17                  Parties may have against General Star both contractual and
                    extracontractual related to this matter and General Star's handling
18                  of this matter.

19    SA §1.11. "Released Parties" means the Chapter 7 Estate, Asset, Storey, Gen Star, the Anywhere

20    Defendants and, in the case of Gen Star and the Anywhere Defendants, all parent, subsidiaries,

21    affiliates, and franchisees, along with all of their agents, trustees, employees, attorneys and

22    independent contractors. SA §1.15.

23           4.    <u>Objections and exclusions</u>

24           The Settlement Agreement provides Class members the opportunity to exclude

25    themselves from the Settlement or object to the Settlement at any time during the claims

26    period. SA §3.4. Exclusion requests and objections may be submitted either by email or mail.

27    Any person who validly excludes themselves from the settlement will not be bound by the

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  release in the Settlement Agreement. SA §5.2. Any objections will be addressed at the Final

2  Approval Hearing. SA §3.1.

3        5.        The proposed notice plan

4        The Settlement Agreement provides for notice to the class members. SA §3.3. The

5  names and contact information for class members associated with the telephone numbers on

6  the class list will be compiled from Asset Realty's records and reverse lookups. SA §2.4, 3.3.1.

7        Direct notice will be provided via email or postcard to every person on the class list with

8  either an email or mailing address. SA §§3.3.4, 3.3.5. The Settlement Administrator will send a

9  reminder notice to encourage class members to file claims. SA §§3.3.4, 3.3.5. There will also be

10 a publicly available Settlement Website. SA §3.3.2. To supplement the direct notice, the

11 Settlement Administrator will provide online publication notice through banner advertising that

12 meets industry standards. SA §3.3.6.

13                   III.    ARGUMENT

14 **A.    The proposed settlement should be preliminarily approved.**

15       The court's role at the preliminary approval stage is to ensure that "the agreement is

16 not the product of fraud or overreaching by, or collusion between, the negotiating parties, and

17 that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

18 *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (citation omitted); *see also In re*

19 *Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015). As this Court recently

20 explained, "if the proposed settlement appears to be the product of serious, informed,

21 noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential

22 treatment to class representatives or segments of the class, and falls within the range of

23 possible approval" preliminary approval should be granted. *Randall v. Integrated Commc'n*

24 *Serv.*, 2023 WL 5743133 at *2 (W.D. Wash. Sept. 6, 2023). That said, the district court must

25 scrutinize any settlement, especially a settlement reached, as here, before a class is certified.

26 *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); *see also*

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  *McKinney-Drobnis v. Oreshack,* 16 F.4th 594, 608 (9th Cir. 2021) (reiterating that pre-

2  certification settlements must withstand "heightened" scrutiny).

3      Under Rule 23(e)(2), a district court considers whether (A) the class representatives and

4  their counsel have adequately represented the class; (B) the proposal was negotiated at arm's

5  length; (C) the relief provided by the settlement is adequate, taking into account: (i) the costs,

6  risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing

7  relief including the method of processing class-member claims, if required; (iii) the terms of any

8  proposed award of attorneys' fees, including timing of payment; (iv) any agreement required to

9  be identified under Rule 23(e)(3) made in connection with the proposed settlement; and (v) the

10  proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

11      These factors are similar to those previously identified by the Ninth Circuit, including: (1)

12  the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further

13  litigation; (3) the risk of maintaining class action status through trial; (4) the amount offered in

14  settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the

15  experience and views of counsel; (7) the presence of a governmental participant; and (8) the

16  reaction of the class members to the proposed settlement. *See In re Bluetooth*, 654 F.3d at 946.

17      The balance of these factors establishes that the Settlement should be preliminarily

18  approved.

19      1.    <u>The settlement is the result of arm's-length, non-collusive negotiations.</u>

20      Rule 23(e)(2)(B) requires the court to consider whether the settlement was negotiated

21  at arm's length. "Arm's length negotiations conducted by competent counsel constitute *prima*

22  *facie* evidence of fair settlements." *Ikuseghan v. Multicare Health Sys.*, 2016 WL 3976569, *3

23  (W.D. Wash. July 25, 2016); *see also Randall*, 2023 WL 5743133 at *4 ("A proposed class

24  settlement is presumptively fair when reached after meaningful discovery, arm's length

25  negotiation, and conducted by capable, experienced counsel.  The involvement of an

26  experienced mediator also supports a finding of fairness.").

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    In negotiating the settlement, Plaintiff's counsel drew upon their many years of prior

2  experience in litigating and resolving consumer class action cases, including CPA, CEMA, and

3  TCPA cases, as well as their solid understanding of the facts and law of this case. Reaching the

4  settlement required private mediation and two settlement conferences that collectively took

5  place over four days as well as lengthy informal settlement discussions that took place for over

6  a year. Murray Decl. ¶¶23-25. The parties were assisted by three different neutrals, Judges Cox,

7  Heston, and Fricke. *See Ruch v. AM Retail Group, Inc.,* 2016 WL 1161453, at *11 (N.D. Cal. Mar.

8  24, 2016) (holding that the "process by which the parties reached their settlement," which

9  included "formal mediation … weigh[ed] in favor of preliminary approval"); Fed. R. Civ. P.

10  23(e)(2) advisory committee's note to 2018 amendment ("the involvement of a neutral or

11  court-affiliated mediator or facilitator in [settlement] negotiations may bear on whether they

12  were conducted in a manner that would protect and further the class interests").

13    The Ninth Circuit has identified "red flags" that may suggest that plaintiff's counsel

14  allowed pursuit of their own self-interest to infect settlement negotiations, including when

15  counsel receive a disproportionate portion of the settlement, the parties agree to a "clear

16  sailing" arrangement providing for the payment of attorneys' fees separate and apart from

17  class funds, or the parties agree that any fees not awarded will revert to defendants rather than

18  be added to the class fund. *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 569 (9th Cir.

19  2019). None is present in this settlement. Because Class Counsel will be paid from the same

20  Settlement Fund as Class Members, they were incentivized to negotiate the largest fund

21  possible and Defendants are free to object to Class Counsel's request. The Court has ultimate

22  discretion over the amount of the attorneys' fee award after reviewing Class Counsel's motion.

23  SA §§1.21 (non-reversionary fund), 4.2 (fees paid from non-reversionary fund in amount

24  approved by the Court).

25

26

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    2.    <u>The settlement's relief is adequate considering the strength of Plaintiff's case,</u>
<u>the risks of continued litigation, and Defendants' finances.</u>

2

3        Defendants' agreement to pay $700,000 is adequate given the risks and delays of

4    continued litigation. The estimated payments of $28-$55 are in line with settlements approved

5    by courts in similar CEMA and TCPA cases. *See, e.g.*, *Gragg v. Orange Cab Co., Inc.*, No. 12-cv-

6    00576 (RSL) (W.D. Wash. 2019) ($48 per claimant plus $12 voucher for all identifiable class

7    members); *Wright v. Lyft, Inc.*, No. 14-cv-00421 (BJR) (W.D. Wash. 2019) (payments of up to

8    $132 per class member based on circumstances); *Steinfeld v. Discover Fin. Servs.*, No. C 12-

9    01118, Dkt. No. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98); *Adams v.*

10    *AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept.

11    28, 2012) (claimants received $40); *Estrada v. iYogi, Inc.,* 2015 WL 5895942, at *7 (E.D. Cal. Oct.

12    6, 2015) (claimants received $40).

13        The settlement's non-monetary relief provides additional value. Storey has agreed that

14    he and any company he owns or controls, will not text Settlement Class Members unless they

15    have obtained clear and affirmative consent. SA §2.6.12. Storey also has agreed to shut down

16    the lead generation system that he and Asset used to send illegal texts, delete the website and

17    underlying files through which Asset and Storey ran their illegal business, and delete related

18    videos from the YouTube channel @AssetChad "Conversion Coaching AI." SA §2.6. These

19    practice changes will benefit all members of the Settlement Class regardless of whether they

20    submit a claim because they are designed to stop the illegal spam texts.

21        While Plaintiff is confident in the strength of his claims, he recognizes the risks and costs

22    involved in seeing this lawsuit through class certification, dispositive motions, and trial.

23    Substantial additional discovery remains to be completed, including expert discovery. If the

24    Court denied Plaintiff's motion for class certification, the other Settlement Class Members

25    would be left without relief. Even if the Court granted the motion, Defendants could move to

26    decertify, and Defendants might also move for summary judgment. If the class and claims

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    survived these procedural hurdles, they would still face the risks inherent in any trial, and either

2    party could then appeal, creating additional delay and risk.

3            Plaintiff's ability to collect a favorable judgment is a substantial concern in this case,

4    since Asset filed for bankruptcy in 2023 and Storey faces a substantial judgment in other

5    litigation. Although the Anywhere Defendants are solvent, they have consistently denied that

6    they can be held liable for Asset and Storey's conduct. Proving vicarious liability can be

7    challenging in TCPA cases. *See Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014-15

8    (9th Cir. 2018) (affirming summary judgment where plaintiff failed to provide sufficient

9    evidence of vicarious liability); *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 453 (9th Cir.

10   2018) (same). And there is very little case law addressing CEMA's "substantial assistance"

11   language. The settlement avoids these risks and potentially significant litigation costs and

12   ensures that Settlement Class Members receive a guaranteed recovery.

13           The Settlement Class had additional hurdles to clear before any recovery. Plaintiff and

14   the Settlement Class would not only have to prevail at trial, but also retain any favorable

15   judgment through appeal, which would be expensive and time-consuming and would present

16   risk to all parties. There are two recent examples of TCPA cases where a certified class prevailed

17   at trial but the cases dragged on through lengthy appeals. *See Krakauer v. DISH Network*, 925

18   F.3d 643(4th Cir. 2019) (affirming judgment for Class); *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109

19   (9th Cir. 2022) (vacating judgment on due process grounds and remanding for further

20   proceedings). This settlement, by contrast, provides prompt and certain relief. *See Nat'l Rural*

21   *Telecommc'ns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("The Court shall

22   consider the vagaries of litigation and compare the significance of immediate recovery by way

23   of the compromise to the mere possibility of relief in the future, after protracted and expensive

24   litigation.").

25

26

27

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL - 12
CASE NO. 3:25-cv-05078-LK

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

       3.      <u>The settlement will be fairly distributed to Settlement Class Members.</u>

2

       The funds will be allocated to Settlement Class Members in a manner that is fair and

3

reasonable. Each Settlement Class Member who submits a valid claim will receive the same

4

Claimant Award. SA §4.6.

5

       4.      <u>Plaintiff's Counsel will request approval of a fair and reasonable fee.</u>

6

       Plaintiff's counsel intend to request an attorneys' fee award of $231,000, which is one-

7

third of the Settlement Fund to compensate them for the work performed on behalf of the

8

Settlement Class. They will also seek reimbursement of the out-of-pocket expenses they

9

incurred prosecuting this action, which as of this filing are over $93,000. The attorneys' fees

10

and costs Class Counsel seek are reasonable under the circumstances of this case. *See In re*

11

*Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (requiring that any

12

attorneys' fee awarded be reasonable).

13

       District courts have discretion to use either the percentage-of-the-fund or the lodestar

14

method to calculate a reasonable attorneys' fee from a common fund established by a class

15

action settlement. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The Ninth

16

Circuit uses 25% as the benchmark to calculate an attorneys' fee award using the percentage of

17

the fund method. *Online DVD-Rental*, 779 F.3d at 949. But the Ninth Circuit has recognized that

18

"the benchmark percentage should be adjusted, or replaced by a lodestar calculation, when

19

special circumstances indicate that the percentage recovery would be either too small or too

20

large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican*

21

*Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Using the benchmark

22

percentage to calculate a reasonable fee in this case would result in an award that is too small.

23

Although the requested award is 33.33% of the Settlement Fund, it reflects a substantial

24

negative multiplier (0.26) of Class Counsel's lodestar, which as of May 7, 2025 was $894,895.

25

*See Wiliams v. PillPack,* 2025 WL 1149710, at *2 (W.D. Wash. Apr. 18, 2025) (granting final

26

approval and awarding one third of fund in TCPA case where lodestar was less than fee

27

request); *Mannacio v. Sovereign Lending Grp. Inc.,* No. 3:22-cv-05498-TMC, ECF No. 77 (W.D.

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL - 13
CASE NO. 3:25-cv-05078-LK

1  Wash. Mar. 1, 2024) (same); *Randall v. Integrated Commc'n Servs. Inc.,* No. 3:20-cv-05438-DGE,

2  ECF No. 136 (W.D. Wash. Mar. 29, 2024) (same); *Dennings v. Clearwire Corp*, Case No. C10-

3  1859JLR, 2013 WL 1858797, at *6 (W.D. Wash. May 3, 2013) (finding reasonable a fee request

4  with a negative multiplier of between .92 and .98). The requested award is reasonable under

5  the circumstances of this case. *See, e.g., Cavnar v. BounceBack, Inc*., No. 2:45-CV-235-RMP, ECF

6  No. 154 (E.D. Wash. Sept. 15, 2015) (granting final approval of settlement and approving award

7  equaling 43% of total settlement fund where award was less than reasonable lodestar).

8      Class Counsel will prepare and file a comprehensive motion for an award of attorneys'

9  fees supported by detailed time entry records within thirty days after the Court enters a

10  preliminary approval order in this matter. The motion will be posted on the Settlement Website

11  30 days before the deadline for class members to opt-out of or object to the settlement. SA

12  §§2.5, 3.3.2; Fed. R. Civ. P. 23(h); *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994

13  (9th Cir. 2010).

14      5.    <u>The reaction of the Settlement Class to the proposed settlement.</u>

15      Settlement Class Members have not yet had an opportunity to react to the proposed

16  settlement because notice has not yet gone out. Plaintiff will address Settlement Class

17  Members' reaction in his motion for final settlement approval.

18  **B.    Certification of the Settlement Class is appropriate.**

19      The Settlement Class satisfies the requirements of Rule 23(a) and (b)(3). The Rule 23(a)

20  requirements are numerosity, commonality, typicality and adequacy. Rule 23(b)(3) requires

21  plaintiffs to establish "that the questions of law or fact common to class members predominate

22  over any questions affecting only individual members, and that a class action is superior to

23  other available methods for fairly and efficiently adjudicating the controversy."

24      1.    <u>The Settlement Class satisfies the requirements of Rule 23(a).</u>

25      The proposed Settlement Class has approximately 95,862 members, which satisfies the

26  numerosity requirement. *See Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 548-49 (N.D. Cal.

27  2007) (numerosity is generally satisfied when a class has at least 40 members).

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    The Settlement Class also satisfies the commonality requirement, which requires that

2    class members' claims "depend upon a common contention," of such a nature that

3    "determination of its truth or falsity will resolve an issue that is central to the validity of each

4    [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Overarching

5    common questions include whether Defendants initiated or assisted in the transmission of

6    commercial electronic text messages to Washington citizens in violation of CEMA, whether

7    Defendants sent two or more text messages to telephone numbers registered on the National

8    DNC Registry in violation of the TCPA; whether Storey is personally liable under CEMA and the

9    TCPA; and whether the Anywhere Defendants are vicariously liable for texts that Asset and

10    Storey sent. *See, e.g., Williams v. PillPack LLC*, 343 F.R.D. 201, 211 (W.D. Wash. 2022) (finding

11    that questions of vicarious liability satisfied commonality); *Kristensen v. Credit Payment Servs.*,

12    12 F. Supp. 3d 1292, 1306 (D. Nev. 2014) (questions of TCPA liability satisfied commonality);

13    *McMillion v. Rash Curtis & Assocs.*, 2017 WL 3895764, at *5 (N.D. Cal. Sept. 6, 2017) (where the

14    "Defendant engaged in the same practice with respect to all class members, … whether that

15    practice was performed without prior express consent is common to the classes").

16    Typicality is satisfied if "the claims or defenses of the representative parties are typical

17    of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the

18    claims of Settlement Class Members because they arise from the same course of alleged

19    conduct: text messages promoting Defendants' services sent to cell phone numbers assigned to

20    Washington residents. *See Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 569 (W.D. Wash. 2012)

21    (typicality satisfied where the plaintiff's claims, "like all class members' claims, arise from text

22    marketing campaigns commissioned by Papa John's franchisees and executed by the same

23    marketing vendor").

24    The adequacy of representation requirement is satisfied because Plaintiff's interests are

25    not antagonistic to those of other Settlement Class Members and the Settlement Class is

26    represented by qualified counsel. *See Hansen v. Ticket Track, Inc.*, 213 F.R.D. 412, 415 (W.D.

27    Wash. 2003); Murray Decl. ¶¶1-10; Green Decl.; Paronich Decl. Plaintiff and his counsel

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   vigorously advocated on behalf of Settlement Class Members throughout this litigation,

2   including during the arm's-length negotiations that resulted in this settlement.

3        2.    The Settlement Class satisfies the requirements of Rule 23(b)(3).

4        Rule 23(b)(3) CR 23(b)(3) requires that common questions predominate over any

5   questions affecting only individual class members, and that a class action is superior to other

6   available methods for the fair and efficient adjudication of the controversy. Both requirements

7   are satisfied here.

8        The predominance inquiry addresses "whether proposed classes are sufficiently

9   cohesive to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor*, 521 U.S.

10  591, 622 (1997). The focus is "on the relationship between the common and individual issues.

11  When common questions present a significant aspect of the case and they can be resolved for

12  all members of the class in a single adjudication, there is clear justification for handling the

13  dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. In the

14  context of settlement class certification, predominance is "readily met" where "class members

15  were exposed to uniform…misrepresentations and suffered identical injuries within only a small

16  range of damages." *Hyundai*, 926 F.3d at 559.

17       Common questions of law and fact predominate here, because the common issues are

18  dominant, central, and overriding in this litigation. Because Defendants engaged in a standard

19  practice, determining whether their transmission of unsolicited texts to Washingtonians' cell

20  phones violated Washington and federal law—and whether the Anywhere Defendants

21  substantially assisted with the transmission—would be tried with predominantly common

22  evidence focusing on Defendants' conduct.

23       Rule 23(b)(3) also looks at whether a "class action is superior to other available methods

24  for the fair and efficient adjudication of the controversy." Because the claims are being certified

25  for settlement purposes, there are no issues with manageability. *Amchem*, 521 U.S. at 620

26  ("Confronted with a request for settlement-only certification, a district court need not inquire

27  whether the case, if tried, would present intractable management problems … for the proposal

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  is that there be no trial."). Resolving thousands of claims in one action is superior to individual

2  lawsuits and promotes consistency and efficiency of adjudication. *See id.* at 617. If class

3  members prefer an individual action, they may opt out.

4      Certification for settlement purposes is appropriate.

5  **C.    The Notice Plan complies with Rule 23(e) and due process.**

6      Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class

7  members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1). Class

8  members are entitled to the "best notice that is practicable under the circumstances" of any

9  proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B). Under

10 Rule 23(c)(2)(B) "notice may be by one or more of the following: United States mail, electronic

11 means, or other appropriate means." To comply with due process, notice must be "the best

12 notice practicable under the circumstances, including individual notice to all members who can

13 be identified through reasonable effort." *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997).

14     The Settlement Agreement requires notice to be sent via mail or email (where available)

15 to Settlement Class Members using address information from Asset Realty's records and

16 reverse lookups and only after the administrator performs address updates and verifications.

17 SA §1.22, 3.3. The Settlement Administrator will establish a toll-free number that Class

18 Members can call for more information. *Id.* §3.3.3.

19     In addition to direct notice, the Administrator will maintain a Settlement Website which

20 will display the operative Complaint, Settlement Agreement including Notices, claim form, the

21 Preliminary Approval Order, Class Counsel's Motion for Fees and all other filings and orders

22 made in connection with settlement of this action. *Id.* § 3.3.2, Ex. A. The Settlement

23 Administrator will also run an online advertising campaign. *Id.* § 3.3.6.

24     The proposed notices, (SA Exhibits C-G) use plain language so they are easy to

25 understand. They include key information about the settlement, including the deadline for

26 claims, exclusions, and objections, and the date of the Final Approval Hearing (and that the

27 hearing date may change without further notice). The notices state the amount of the fee and

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL - 17
CASE NO. 3:25-cv-05078-LK

1   cost award Class Counsel will request. The notices estimate that each Class member will receive

2   $28-$55 and disclose that, by participating in the settlement, Settlement Class Members give

3   up the right to sue Defendants for claims covered by the release. The notices direct Class

4   Members to the Settlement Website and provide the toll-free number for more information.

5       The proposed Notice Plan complies with Rule 23 and due process. *See* Fed. R. Civ. P.

6   23(c)(2)(B); *see also Hyundai*, 926 F.3d at 567 ("settlement notices must 'present information

7   about a proposed settlement neutrally, simply, and understandably'").

8                           **IV.    CONCLUSION**

9       Plaintiff requests that the Court enter an order that: (1) grants preliminary approval of

10  the proposed settlement; (2) provisionally certifies the Settlement Class and appoints Plaintiff

11  as Class Representative and Plaintiff's counsel as Class Counsel; (3) directs notice to be sent to

12  Settlement Class Members in the form and manner proposed by the parties; (4) appoints CDL to

13  serve as Settlement Administrator; and (4) sets a schedule and hearing date for final settlement

14  approval and related deadlines.

15      RESPECTFULLY SUBMITTED AND DATED this 16th day of May, 2025.

16                          TERRELL MARSHALL LAW GROUP PLLC

17                          *I certify that this memorandum contains 6,000*
18                          *words in compliance with the Court's order at Dkt.*
                            *27.*
19

20                          By: /s/ Jennifer Rust Murray, WSBA #36983
                               Beth E. Terrell, WSBA #26759
21                             Email: bterrell@terrellmarshall.com
                               Jennifer Rust Murray, WSBA #36983
22                             Email: jmurray@terrellmarshall.com
                               Eden B. Nordby, WSBA #58654
23                             Email: enordby@terrellmarshall.com
                               936 North 34th Street, Suite 300
24                             Seattle, Washington 98103
                               Telephone: (206) 816-6603
25                             Facsimile: (206) 319-5450

26

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Andrew P. Green, WSBA #32742
Email: andy@green-wilmot.com
GREEN & WILMOT, PLLC
1919 N. Pearl Street, Suite B-3
Tacoma, Washington 98046
Telephone: (253) 625-7300
Facsimile: (253) 292-0832

Anthony I. Paronich, *Admitted Pro Hac Vice*
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 485-0018

*Attorneys for Plaintiff*

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com