1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11   DAVID J. KOVANEN,                                 CASE NO. 3:25-cv-05078-LK

12                          Plaintiff,                 ORDER DENYING MOTION FOR
            v.                                         PRELIMINARY APPROVAL OF
                                                       CLASS ACTION SETTLEMENT
13   ASSET REALTY LLC, et al,                          WITHOUT PREJUDICE

14                          Defendants.

15

16        This matter comes before the Court on Plaintiff's Motion for Preliminary Approval of Class

17   Action Settlement. Dkt. No. 32. The Court has considered the parties' Fully Executed Settlement

18   Agreement, Dkt. No. 37, and the balance of the record. For the reasons discussed below, the Court

19   denies without prejudice the request for preliminary settlement approval.

20                              **I.   BACKGROUND**

21        This case involves allegedly "unsolicited commercial text messages" sent in violation of

22   Washington's Consumer Protection Act, Washington's Commercial Electronic Mail Act, and the

23   National Telephone Consumer Protection Act. Dkt. No. 1-1 at 2. Plaintiff David J. Kovanen filed

24   suit on behalf of himself and a purported class of similarly situated individuals against numerous

1    Defendants—Asset Realty, LLC, doing business as Century 21 Northwest, and Chad Barron

2    Storey (collectively, the "Asset Defendants"); and Anywhere Real Estate Inc., Anywhere Real

3    Estate Group LLC, Anywhere Real Estate Services Group LLC, Anywhere Intermediate Holdings

4    LLC, and Century 21 Real Estate LLC (collectively, the "Anywhere Defendants")—alleging that

5    they, or their agents and employees, "initiated or provided substantial assistance to licensed real

6    estate agents and non-licensed real estate professionals who transmit thousands of unsolicited

7    commercial electronic text messages." *Id.* at 1, 4.

8    **A.    The Development and Use of the Lead Generation Platform**

9          According to the complaint, Defendant Storey—the sole member and manager of

10   Defendant Asset Realty, LLC—created a "lead generation platform" in approximately 2005 that,

11   among other things, obtained contact information of certain property owners, "predict[ed] the best

12   time to contact" property owners, and determined the "frequency of contacts a telemarketer should

13   make." *Id.* at 11–12. Storey allegedly also "helped to create a coaching and training program" to

14   teach users about the lead generation platform. *Id.* at 12. In 2015, Storey transferred his lead

15   generation platform to a company that he formed and managed—Pipeline Platform, LLC

16   ("Pipeline"). *Id.* at 13. Pipeline licensed the lead generation platform to a predecessor of Defendant

17   Anywhere Real Estate Inc.—Realogy Holdings Corp ("Realogy"). *Id.* Realogy paid Pipeline "up-

18   front fees . . . and a percentage of commission received on any sale" and provided access to "500

19   different franchise owners that Pipeline could form strategic alliances with to license the [lead

20   generation platform]." *Id.* Around this time, the Asset Defendants also acquired a Century 21

21   franchise operating under the trade name Century 21 Northwest. *Id.* Century 21 is one of the

22   Anywhere Defendants' brands and subsidiaries. *Id.* at 21–22. The franchise agreement that

23   Century 21 and Asset Realty signed in 2015 authorizes Asset Realty to operate one or more real

24   estate brokerage offices as Century 21 offices, and permitted the Asset Defendants to use the

ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
WITHOUT PREJUDICE - 2

1  Pipeline Platform lead generation system to generate business for Century 21. *Id.* at 22–23. The

2  arrangement between Realogy, Century 21, and the Asset Defendants allowed the Asset

3  Defendants to expand their "real estate enterprise." *Id.* at 14. Eventually Pipeline became a part of

4  Defendant Asset Realty, LLC, *id.*, and Realogy became a part of Defendant Anywhere Real Estate

5  Inc., *id.* at 13. "As of October 2020, Asset [Realty] was earning $13.9 million per year in 'top-line

6  revenue.'" *Id.* at 15.

7         In September 2020, text messaging functionality was added to the lead generation platform.

8  *Id.* The platform "automatically formulates and composes the text messages that are sent to

9  Defendants' potential customers," only requiring the user to "hit send." *Id.* at 16. Defendants

10  allegedly began sending text messages "to solicit real estate buyers and sellers to use Defendants'

11  real estate services and generate commissions and other revenue for Defendants and Defendants'

12  agents." *Id.* at 15. Defendants purportedly did not obtain subscribers' "clear and affirmative

13  consent" to receive those text messages or take steps to ensure that the telephone numbers were

14  not on the National Do Not Call Registry ("DNC Registry"). *Id.* at 16.

15         Between February and June 2021, Mr. Kovanen—a Washington resident—received

16  "unsolicited commercial electronic text message[s]" from Defendants, which he says were an

17  "invasion of privacy" and caused him to "waste[] time and attention tending to unsolicited and

18  unwanted junk text messages." *Id.* at 27–29. Mr. Kovanen says that Defendants violated both state

19  and federal laws by sending these texts. *Id.* at 5. According to the complaint, Defendants "initiated

20  or assisted in the transmission of unsolicited commercial electronic text messages to the cellular

21  telephones of hundreds and possibly thousands of Washington residents without first obtaining

22  their clear and affirmative consent to receive such messages." *Id.* at 28.

23

24

ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
WITHOUT PREJUDICE - 3

1    **B.     Procedural History**

2         This case had a long procedural history before it was removed to this Court in February

3    2025. Dkt. No. 1. Mr. Kovanen originally filed a complaint in the Superior Court of Washington

4    on December 10, 2021. Dkt. No. 19-1 at 3–16. He and the Asset Defendants mediated in August

5    2022 with assistance from a retired judge, but the case did not settle. Dkt. No. 32 at 7. On

6    September 25, 2023, Mr. Kovanen filed an amended complaint. Dkt. No. 19-2 at 347–75. Neither

7    the original nor the first amended complaint contained a federal cause of action. *See generally* Dkt.

8    No. 19-1 at 3–16; Dkt. No. 19-2 at 347–75.

9         In February 2023, Defendant Asset Realty LLC filed for bankruptcy, after which Mr.

10   Kovanen and the Asset Defendants participated in a settlement conference with a bankruptcy

11   judge, but it too was unsuccessful. Dkt. No. 32 at 6–7; *see also* Dkt. No. 19-2 at 154 (reflecting

12   Debtor Asset Realty, LLC as the Bankruptcy Debtor). On January 10, 2025, Mr. Kovanen filed a

13   second amended complaint, which added claims under the Telephone Consumer Protection Act,

14   47 U.S.C. § 227, Dkt. No. 19-2 at 1018–56, along with a motion for class certification, *id.* at 1071–

15   1103. The Anywhere Defendants timely removed before the state court issued a decision on class

16   certification. Dkt. No. 1 at 2–3. Following removal, the parties participated in a settlement

17   conference with Magistrate Judge Theresa L. Fricke. Dkt. No. 25. The parties agreed to material

18   settlement terms and finalized their agreement on May 14, 2025. Dkt. No. 32 at 7.

19                                  **II.   DISCUSSION**

20        Under Federal Rule of Civil Procedure 23(e), the "claims, issues, or defenses of . . . a class

21   proposed to be certified for purposes of settlement . . . may be settled, voluntarily dismissed, or

22   compromised only with the court's approval." Settlement of class actions "must be fair, adequate,

23   and reasonable." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012). Where the parties reach

24   a class action settlement prior to class certification, district courts apply "a higher standard of

ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITHOUT PREJUDICE - 4

1   fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis*,

2   697 F.3d at 864 (citation modified). "This more exacting review" helps protect "unnamed plaintiffs

3   who class counsel had a duty to represent." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049

4   (9th Cir. 2019) (citation modified). Indeed, "the district court has a fiduciary duty to look after the

5   interests of those absent class members." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015).

6   In the Ninth Circuit, there is no presumption that the settlement is fair. *In re Apple Inc. Device*

7   *Performance Litig.*, 50 F.4th 769, 782–83 (9th Cir. 2022).

8       Courts look for "collusive negotiations," "obvious deficiencies," and "preferential

9   treatment to class representatives or segments of the class," *In re Tableware Antitrust Litig.*, 484

10  F. Supp. 2d 1078, 1079 (N.D. Cal. 2007), and ensure that the proposed settlement "treats class

11  members equitably relative to each other," Fed. R. Civ. P. 23(e)(2)(D). To the extent certain

12  provisions are problematic, the court may not "delete, modify or substitute" them; instead, "[t]he

13  settlement must stand or fall in its entirety." *Dennis*, 697 F.3d at 868 (citation modified).

14      Below, the Court discusses deficiencies with various provisions of the Settlement

15  Agreement, related documents, and the motion for preliminary approval.

16  **A.      The Settlement Agreement**

17      1.   Class Definition and Notice

18      Under the Settlement Agreement, the "Settlement Class" includes:

19      All persons, as that term is defined in RCW 19.190.010(11) [i.e., an individual,
        corporation, business trust, estate, trust, partnership, limited liability company,
20      association, joint venture, government, governmental subdivision, agency or
        instrumentality, public corporation, or any other legal or commercial entity] and
21      RCW 19.86.010(1) [i.e., natural persons, corporations, trusts, unincorporated
        associations and partnerships]; (1) to whose telephone numbers Defendants
22      initiated or assisted in the transmission of one or more commercial electronic text
        messages for the purpose of promoting Asset Realty LLC d/b/a Century 21
23      Northwest's real estate services; (2) where such message was sent while such
        person was a Washington resident; (3) and while the number to which the message
24      was sent was assigned to a cellular telephone or pager service that is equipped with

ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
WITHOUT PREJUDICE - 5

short message capability or any similar capability allowing the transmission of text messages; (4) without obtaining the recipients' clear and affirmative consent to receive messages in advance of sending the text message; (5) between December 10, 2017 through June 17, 2022.

The Settlement Class does not include Defendants, any entity that has a controlling interest in Defendants, and Defendants' current or former directors, officers, counsel, and their immediate families. The Settlement Class also does not include any persons who validly request exclusion from it.

Dkt. No. 37 at 6–7. "Settlement Class Member" means "individuals or entities who are within the Settlement Class." *Id.* at 7. And "Class List" means "the list of telephone numbers that received text messages from Asset [Realty] that was identified by Plaintiff's expert in Exhibit 8 to Plaintiff's expert's report." *Id.* at 5. There are several issues with these definitions.

First, it is unnecessary and potentially confusing to class members to cross-reference two sections of the Revised Code of Washington with overlapping definitions in the Settlement Class definition rather than having a self-contained description of "persons."

Second, it is unclear at best whether the parties can capably identify Washington *residents* "to whose telephone numbers Defendants initiated or assisted in the transmission of one or more commercial electronic text messages for the purpose of promoting Asset Realty LLC d/b/a Century 21 Northwest's real estate services." Although the Agreement contemplates providing notice of the proposed settlement to "all Settlement Class Members" by compiling "a list of persons that will receive individual notice" from "the Paragraph 2.4 data," the Paragraph 2.4 data does not seem particularly reliable for this purpose. *Id.* at 10. Paragraph 2.4 requires Mr. Kovanen to provide to the Settlement Administrator a "Class List" comprised of "(1) the telephone numbers listed on Exhibit 8 to Plaintiff's expert's report, and (2) the names and contact information of the subscriber or ordinary user of the telephone numbers at the time the text messages at issue in this case were sent, to the extent Plaintiff has access to that information." *Id.* at 8. But the version of Exhibit 8 to Mr. Kovanen's expert's report that was provided to the Court contains no list of numbers; it is

ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITHOUT PREJUDICE - 6

1   instead a one-page table summarizing "the results of the [expert's] analysis related to Waterfall

2   analysis"—i.e., how the expert parsed 626,688 texting activities to arrive at the conclusion that

3   Defendants improperly sent texts to 95,862 "unique telephone numbers that contained *Area Codes*

4   *within the State of Washington* and were associated with text-message capable telephone

5   numbers." Dkt. No. 19-2 at 1137–1139, 1309 (emphasis added).

6       Mr. Kovanen does not explain (1) why it is reasonable to apparently assume that

7   individuals with area codes associated with states outside Washington could not have been

8   Washington residents at the time the text messages were sent;[1] or (2) why Mr. Kovanen and not

9   Defendants are tasked with supplying "the names and contact information of the subscriber or

10  ordinary user of the telephone numbers at the time the text messages at issue in this case were

11  sent," given that it appears Mr. Kovanen may not have access to it, *see* Dkt. No. 37 at 8 (only

12  requiring this information "to the extent Plaintiff has access to [it]").[2] Based on the current

13  definitions, it appears that there may be individuals in the Settlement Class—which includes

14  persons who received a relevant text message "while such person was a Washington resident,"

15  Dkt. No. 37 at 6—who are not on the Class List—which encompasses only telephone numbers

16  "contain[ing] Area Codes within the State of Washington," Dkt. No. 19-2 at 1124. In other words,

17  Washington residents with out-of-state area codes could be Settlement Class Members but would

18  not appear on the Class List. If there is no reliable method to identify whether a given text was

19

20  [1] The expert was "asked to opine whether a reliable method exists to identify . . . whether . . . the text was sent to a
    telephone number that was not assigned to a Washington *resident*," but it does not appear that the expert answered
21  that question. Dkt. No. 19-2 at 1121 (emphasis added). He proceeded to simply identify "which text messaging records
    maintained by Defendants . . . were made to telephone numbers that were associated with a *Washington Area Code*[.]"
22  *Id.* at 1120 (emphasis added).

23  [2] In any renewed motion for preliminary approval, Mr. Kovanen must address whether the planned methods of notice
    to the class will reach a high percentage of its members. Under the Settlement Agreement, direct notice will be sent
    via email and postcard, but it is unclear at this juncture whether the parties are in possession of more contact
24  information for class members other than their phone numbers. If notice is not likely to reach a high percentage of
    class members, an opt-out notice is unacceptable.

ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
WITHOUT PREJUDICE - 7

sent to a Washington resident, the class definition needs to be narrowed.[3] Otherwise, the parties

need to revise the Settlement Agreement to ensure that notice is reasonably calculated to reach all

class members who would be bound by the proposal.

Based on these apparent shortcomings, the Court cannot conclude that the parties'

settlement notice plan constitutes "a reasonable manner" of providing notice "to all class members

who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). In any renewed motion for

preliminary approval, Mr. Kovanen must address the issues discussed above.

2. <u>Key Deadlines</u>

The Settlement Agreement provides the following key dates and deadlines:

- **Five days after Preliminary Approval**: Plaintiff provides the "Class List" to the Settlement Administrator. Dkt. No 37 at 8.

- **30 days after Preliminary Approval**: "Settlement Notice Date"; the date by which the Settlement Administrator shall provide notice of the provisional class certification and proposed settlement to all Settlement Class Members. *Id.* at 7, 10.

- **60 days after Preliminary Approval**: Class Counsel will apply to the Court for an award of attorneys' fees, costs and expenses. *Id.* at 8.

- **90 days after Preliminary Approval**: Deadline for class members to submit a claim, opt out, or object. *Id.* at 11–13.

- **5 days after the deadline for claim submission, opt out, or objection**: The Settlement Administrator will provide the "parties" (lowercase) with "a declaration of due diligence and proof of mailing, including information as to any inability to deliver notice because of invalid addresses, the number of claims, the number of requests for exclusion, and the number of objections, and report on completion of the notice plan." *Id.* at 12.

- **28 days after the deadline for claim submission, opt out, or objection**: The Settlement Administrator "shall use all reasonable efforts to complete its review of all Claim Forms" by this date. *Id.* at 14.

---

[3] To the extent the parties narrow the class definition to those with Washington *area codes* who received the offending messages, and intend to continue relying on the Class List, Mr. Kovanen fails to establish the accuracy and reliability of the data on which the Class List is based. According to Mr. Kovanen, his "expert identified telephone numbers from data Asset produced during discovery that he alleges are associated with Settlement Class Members." Dkt. No. 32 at 8. But the Court has no way to tell whether the underlying "data Asset produced during discovery" is an accurate, reliable, or comprehensive list of the Class.

ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITHOUT PREJUDICE - 8

- **Up to 14 days after completion of Settlement Administrator's review of all Claim Forms (up to 42 days after deadline for claim submission)**: deadline for claimants whose claims were disallowed to cure any deficiency. *Id.*

- **120 days after Preliminary Approval (30 days after deadline for claim submission, opt out, or objection)**: Plaintiff will file a motion for final approval. *Id.* at 12.

If there are any issues with delivering notice to class members or other problems with the notification or claims administration process, it does not appear that this proposed schedule would permit the Court or parties to identify them prior to the deadline for claim submission, opt out, or objection, nor would Class Counsel or the Court have a meaningful opportunity to address such problems prior to Class Counsel's motion for fees and costs. For these reasons, the Settlement Administrator should be required to inform the parties, and Plaintiff should be required to inform the Court, of any such issues or problems after the Settlement Notice Date but before Class Counsel's application for fees.

Because issues with the notification or claims administration process may require the Court to extend any of the above deadlines, each deadline should be tied to the preceding one rather than to, for example, the preliminary approval date.

And finally, the motion for final approval should occur after all data regarding claim submissions is collected. Because it appears that such data will be collected up to 42 days after the deadline for claim submission, *id.* at 14, the deadline to file a motion for final approval should be scheduled sufficiently after the deficiency cure deadline to accurately account for the claims rate (and any issues encountered during the cure period).

In sum, a revised schedule should look something like the following:

- **Five days after Preliminary Approval**: Plaintiff provides the "Class List" to the Settlement Administrator.

- **25 days after Class List submission date**: "Settlement Notice Date"; the date by which the Settlement Administrator shall provide notice of the provisional class certification and proposed settlement to all Settlement Class Members. [30 days after Prelim Approval]

ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITHOUT PREJUDICE - 9

- **15 days after Settlement Notice Date**: The Settlement Administrator will provide to the parties (who will then file with the Court) a declaration of due diligence and proof of mailing and a description of any issues or problems that have arisen with notifying the class or any other aspect of the claims administration process, and any extensions that may be required to correct or mitigate such issues or problems. If any issues or problems arise subsequent to this date that may require an extension of the claims/opt out/objection period or other deadlines, the Settlement Administrator will notify the parties as soon as possible, and the parties must then file a notice and proposed resolution with the Court as soon as possible. [45 days after Prelim Approval]

- **30 days after Settlement Notice Date**: Class Counsel will apply to the Court for an award of attorneys' fees, costs and expenses. [60 days after Prelim Approval]

- **60 days after Settlement Notice Date**: Deadline for class members to submit a claim, opt out, or object. [90 days after Prelim Approval]

- **28 days after the deadline for claim submission, opt out, or objection**: The Settlement Administrator shall use all reasonable efforts to complete its review of all Claim Forms by this date. [118 days after Prelim Approval]

- **Up to 14 days after completion of Settlement Administrator's review of all Claim Forms**: Deadline for claimants whose claims were disallowed to cure any deficiency. [132 days after Prelim Approval]

- **25 days after completion of Settlement Administrator's review of all Claim Forms**: The Settlement Administrator will provide the parties with a report on its claim administration, including how many class members received notice, the number of claims, the number of requests for exclusion, the number of objections, and any other information the parties and/or Court should be aware of regarding the notification and claims administration process. [143 days after Prelim Approval]

- **21 days after Settlement Administrator's report on claim administration**: Plaintiff will file a motion for final approval. [164 days after Prelim Approval]

3. <u>Settlement Awards</u>

Under the Settlement Agreement, Defendants will pay a total of $700,000 "for any and all payments" under the Agreement, including "but not limited to" sums associated with the "Settlement Notice, Settlement Administration, attorneys' fees, costs, and expenses, and Claimant Awards." Dkt. No. 37 at 7.[4] "Claimant Award" means "the cash payment available to Eligible

---

[4] General Star National Insurance Company and GenStar Insurance Services, LLC, which are defined as "Gen Star" or the "Insurer" but are confusingly referred to as "General Star" in some parts of the Agreement, *see, e.g.*, *id.* at 6, will pay "at least $547,869.82," and apparently Century 21 Real Estate, LLC will pay the rest, *id.* at 7.

ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITHOUT PREJUDICE - 10

1    Claimants[.]" *Id.* at 5. "Eligible Claimant" means "a Settlement Class Member who complies with

2    the claim submission requirements set forth in Paragraphs 4.3 and 4.4." *Id*. Paragraph 4.3 requires

3    a claimant to (1) submit a claim code that is distributed only to members of the Class List—or

4    (2) "provide a phone number . . . that matches a phone number in the Paragraph 2.4 data." *Id.* at

5    13. Because these provisions require an individual to have a phone number on the Class List to be

6    eligible for payment, Settlement Class Members who lack Washington area codes would be

7    ineligible for payment even though they are part of the Settlement Class, *id.* at 6–7, and would

8    have their claims extinguished by the Settlement Agreement, *id.* at 15. Because those class

9    members would have their claims extinguished by the Settlement Agreement but would be

10   ineligible for payment, the Settlement Agreement either suffers from an "obvious deficienc[y]" or

11   provides "preferential treatment to . . . segments of the class." *In re Tableware Antitrust Litig.*, 484

12   F. Supp. 2d at 1079.

13       Furthermore, while the Agreement states that "Claimant Awards" will be paid "pro rata,"

14   Dkt. No. 37 at 14, the Agreement does not describe exactly how that will work. This leaves various

15   unanswered questions. Will Settlement Class Members with more than one device that received

16   texts be entitled to multiple payments? Assuming that claimants who received disproportionately

17   more text messages than others are not entitled to a greater payment, *see id.* at 46, is that a fair

18   result? Is it equitable to pay the holders of the 27,436 "unique numbers" that had been listed on

19   the DNC Registry for more than 30 days at the time they received the texts (thus providing them

20   with a TCPA claim), Dkt. No. 19-2 at 1309; Dkt. No. 1-1 at 29–30, 35–36, the same as other

21   Settlement Class Members? Mr. Kovanen does not explain how the chosen approach "treats class

22   members equitably." Fed. R. Civ. P. 23(e)(2)(D).[5]

23

24   _____
     [5] Mr. Kovanen's motion states that the award amount available to class members would be approximately $265,902,

ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
WITHOUT PREJUDICE - 11

1    Finally, it does not appear that Mr. Kovanen will receive a separate class representative

2  award. The Court asks that he confirm this (if it is indeed the case) in any renewed motion for

3  preliminary approval.

4        4.   Changes to Defendants' Practices

5    In the Settlement Agreement, Defendant Storey agrees to permanently cease operation of

6  Asset's lead management program, allow the website www.pipelineplatform.com and underlying

7  files to be deleted,[6] and delete related videos from the YouTube channel @AssetChad "Conversion

8  Coaching AI." Dkt. No. 37 at 8–10. He also agrees that he and any company he controls will not

9  text any Settlement Class Member without first obtaining clear and affirmative consent. *Id.* at 10.

10    As the parties acknowledge, Dkt. No. 37 at 41–42, some potential class members may ask

11  to be excluded from the settlement and file their own lawsuits against some or all Defendants. As

12  soon as a potential claim is identified, a litigant in federal court is under a duty to preserve evidence

13  it knows or reasonably should know is relevant to the action. *In re Napster, Inc. Copyright Litig.*,

14  462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006). Once the duty attaches, a party must "suspend any

15  existing policies related to deleting or destroying files and preserve all relevant documents related

16  to the litigation." *Id.* at 1070. Given the potential for independent lawsuits from potential class

17  members, the Court will not approve any provision sanctioning the destruction of potentially

18  relevant evidence.

19        5.   Releases

20    As discussed above, the Settlement Agreement purports to release claims of all "Settlement

21

22  but it is unclear how he arrived at that number (as opposed to $268,737) from a $700,000 total sum less (1) a $231,000 fee award; (2) $93,098 for litigation costs; and (3) $107,165 in settlement administration costs. Dkt. No. 32 at 9.

23  [6] Apparently, this deletion will be at the hands of web hosting service Amazon Web Services because Storey has failed to pay the hosting service fees. Dkt. No. 37 at 8–9. The Agreement provides that "no Party shall make any attempt to recover the [Pipeline Platform and related assets], in the ordinary course of business or otherwise," and "[n]o Party

24  will attempt to bring the account current to allow anyone (Party or non-Party) access to the Assets." *Id.* at 9. The Court discusses the potential problems with this approach below.

ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITHOUT PREJUDICE - 12

1    Class Members," while directly notifying only those members who have Washington area codes.

2    These terms are not "fair, adequate, [or] reasonable." *Dennis*, 697 F.3d at 864.

3    **B.        Forms: Long Form Notice, Claim Form, Email Notice, Postcard Notice**

4            There are several issues with the proposed forms as well. First, although Mr. Kovanen

5    repeatedly states in his motion that he expects the pro rata payment to class members to be $28 to

6    $55, Dkt. No. 32 at 4, 9, 14, the Long Form Notice initially states that "Class counsel estimates

7    that payments could be between $31 and $62," Dkt. No. 37 at 40, and later states that "Class

8    Counsel estimate that payments could be between $28 and $55," *id.* at 45. The Court expects

9    representations to the class to be consistent and accurate.

10           Second, the Long Form Notice states that "[a] state court authorized this notice." *Id.* at 40.

11   This error must be corrected in any renewed motion for preliminary approval.

12           Third, the table summarizing class members' "legal rights and options in this lawsuit" in

13   the Long Form Notice describes the releases alternately as "giv[ing] up your right to bring your

14   own lawsuit *about the issues in this Lawsuit*" and "giv[ing] up any rights to sue Defendants

15   separately about the *same legal claims in this lawsuit* [(lowercase)]." Dkt. No. 37 at 41–42

16   (emphasis added); *see also id.* at 46 ("you give up any rights to sue the Defendants separately

17   *about the same issues in this Lawsuit*") (emphasis added); *id.* at 56 (you "give up your right to

18   bring your own lawsuit *about the texts*"). This language should be internally consistent and

19   consistent with the release language in the Settlement Agreement. *See also Hesse v. Sprint Corp.*,

20   598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a

21   related claim in the future even though the claim was not presented and might not have been

22   presentable in the class action, but only where the released claim is based on the identical factual

23   predicate as that underlying the claims in the settled class action." (citation modified)).

24

1     Fourth, the section titled "How do I object or comment?" in the Long Form Notice is

2  inconsistent with the Settlement Agreement. For example, subsection (d) in this section requires

3  the objector to identify "the name and telephone number of any attorney representing you in this

4  matter, *or any attorney who may be entitled to compensation for any reason related to the*

5  *objection*, whether counsel intends to submit a request for fees, and all factual and legal support

6  for that request." Dkt. No. 37 at 47. The Settlement Agreement does not include the italicized

7  portion. *Id.* at 12.

8     Fifth, the section on "When and where will the Court decide whether to approve the

9  settlement?" indicates the hearing will be held in "Suite 15134," *id.* at 49, but the undersigned

10 judge's courtroom is Courtroom 15106. *See* https://www.wawd.uscourts.gov/judges/king-

11 chambers. This correction must be made elsewhere as well. *See, e.g.*, *id.* at 56, 60.

12    Sixth, on the claim form, if the claimant enters a number that is not in the Class List, the

13 site returns the following error message: "Your phone number could not be verified." Dkt. No. 37

14 at 27. To facilitate the resolution of deficient claims during the short cure period, this error message

15 should provide instructions to the claimant on what to do if the claimant believes the number

16 should be included.

17    Seventh, the claim form that can be submitted online or by mail allows claimants to submit

18 up to three mobile numbers, *id.* at 27, while the postcard claim form only includes one, *id.* at 57.

19 If payments will be made based on unique numbers, claimants should all be permitted to submit

20 the same quantity of numbers regardless of which option they choose to submit their claim.

21 **C.    Motion for Preliminary Approval**

22    Mr. Kovanen's motion does not explain why the Court should appoint him as class

23 representative or his attorneys as class counsel.

24

ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
WITHOUT PREJUDICE - 14

1

### III.   CONCLUSION

2      For the foregoing reasons, the Court DENIES without prejudice Mr. Kovanen's Motion for

3   Preliminary Approval of Class Action Settlement. Dkt. No. 32. The parties are cautioned that the

4   deficiencies identified in this Order may not include all deficiencies in the Settlement Agreement.

5   Before submitting a revised agreement for approval, the parties should take care to ensure there

6   are no mistakes. *See N.D. v. Reykdal*, No. 2:22-CV-01621-LK, 2024 WL 4751368, at *2 (W.D.

7   Wash. Oct. 15, 2024) ("Plaintiffs . . . may not seek attorney's fees for their work correcting

8   counsel's mistakes in any forthcoming third motion for preliminary approval."); *Leblanc v. USG7,*

9   *LLC*, No. 6:12-CV-1235-ORL-41TBS, 2016 WL 1358529, at *2 (M.D. Fla. Apr. 6, 2016) ("fees

10   aris[ing] only out of Plaintiffs' counsels' need to correct their mistakes" are "both excessive and

11   redundant").

12      Within 90 days, if another Motion for Preliminary Approval of Class Action Settlement

13   has not yet been filed, the parties must file a Joint Status Report for the Court's use in setting a

14   schedule for the prompt resolution of this case.

15      Dated this 7th day of November, 2025.

16

17      _____
        Lauren King
        United States District Judge

18

19

20

21

22

23

24

ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
WITHOUT PREJUDICE - 15